870 F.2d 957
 130 L.R.R.M. (BNA) 3150, 131 L.R.R.M. (BNA)
2009, 57 USLW 2571,
111 Lab.Cas. P 11,048,
4 Indiv.Empl.Rts.Cas. 373
 Thomas E. WASHINGTON, Plaintiff-Appellant,
v.
UNION CARBIDE CORPORATION, a corporation, Defendant-Appellee,
and
International Association of Machinist and Aerospace
Workers; Local Lodge 598, International
Association of Machinist and Aerospace
Workers, Defendants.
 No. 88-3957.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 1, 1988.
Decided March 27, 1989.
 
 Michael John Del Giudice (G. Nicholas Casey, Jr., Timbera B. Carte, Lewis, Ciccarello & Friedberg, Charleston, W.Va., on brief), for plaintiff-appellant.
 David Dale Johnson, Jr. (Gene W. Bailey, II, Jackson & Kelly, Charleston, W.Va., on brief), for defendant-appellee.
 Before PHILLIPS and WILKINSON, Circuit Judges, and BOYLE, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 WILKINSON, Circuit Judge:
 
 
 1
 This case raises questions about the proper method of resolving claims that a state-law cause of action is preempted under Sec. 301 of the Labor Management Relations Act. We hold that it lies within the discretion of a federal district court, in an appropriate case, to address the state claim on the merits before resolving the Sec. 301 preemption inquiry.
 
 
 2
 Thomas E. Washington brought this action in federal district court after being fired from his position at Union Carbide's facility in South Charleston, West Virginia. He alleged, inter alia, that Union Carbide violated the public policy of West Virginia by discharging him in retaliation for filing safety complaints with the company. The district court granted Union Carbide's motion for summary judgment holding that Washington's state-law claims were preempted by Sec. 301 of the Labor Management Relations Act of 1947. The district court also found that Washington had failed to establish a violation of West Virginia public policy upon which to base a cause of action for retaliatory discharge. We agree that Washington failed to allege a valid cause of action for retaliatory discharge under West Virginia law and therefore find it unnecessary to address the question of Sec. 301 preemption. We affirm the grant of summary judgment in favor of Union Carbide.
 
 I.
 
 3
 Thomas E. Washington worked for Union Carbide from November 29, 1976 until his discharge on July 29, 1985. He was a member of the International Association of Machinists and Aerospace Workers, and its Local 598, which was the exclusive bargaining agent for all hourly employees at the Union Carbide facility. Union Carbide and Local 598 were parties to a collective bargaining agreement that prohibited termination of employees "without just cause" and established a comprehensive grievance and arbitration procedure for the resolution of disputes under the collective bargaining agreement. The collective bargaining agreement also contained provisions on employee health and safety. It encouraged employees to report unsafe working conditions to Union Carbide and to suggest ways in which safety could be improved.
 
 
 4
 Washington was discharged by Union Carbide on July 29, 1985. He was advised that his employment was being terminated because of his insubordinate behavior, his departures from the job site without supervisory approval, and his past citations for inadequate job performance. Washington filed a grievance pursuant to the collective bargaining agreement challenging his discharge. He claimed that Union Carbide fired him because he filed numerous safety complaints with the company. His grievance was rejected by Union Carbide and was heard by an arbitration panel on December 16, 1985. The panel denied Washington's grievance on March 3, 1986, finding that he was discharged with just cause.
 
 
 5
 On February 5, 1987, Washington brought suit against Union Carbide, the International Association of Machinists and Aerospace Workers, and its Local 598. He claimed, as a matter of federal law, that Union Carbide breached its contractual duty not to terminate his employment without just cause, that his termination violated Title VII of the Civil Rights Act of 1964, that the Union breached its duty to fairly represent him, that the arbitration decision was erroneous as a matter of law and procedure. He also claimed that Union Carbide violated federal and West Virginia public policy by discharging him in retaliation for filing numerous safety complaints with the company. Union Carbide replied in part that Washington's state claims were preempted by federal law.
 
 
 6
 On November 10, 1987, the district court dismissed Washington's claims that Union Carbide breached the collective bargaining agreement and violated Title VII of the Civil Rights Act of 1964. The district court also dismissed Washington's claims against the Union.
 
 
 7
 On February 1, 1988, the district court granted summary judgment in favor of Union Carbide. It did so for two reasons. It held, as an initial matter, that Washington's alleged cause of action in tort for retaliatory discharge was actually a suit against Union Carbide for breach of the collective bargaining agreement. As such, Washington's state-law claims were preempted by Sec. 301 of the Labor Management Relations Act of 1947. The district court found, in the alternative, that there was no right of action premised on West Virginia public policy protecting Washington from discharge for filing safety complaints. Washington appeals from the grant of summary judgment in favor of Union Carbide.
 
 II.
 
 8
 Section 301 of the Labor Management Relations Act of 1947 (LMRA) provides in pertinent part that:
 
 
 9
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties....
 
 
 10
 29 U.S.C. Sec. 185(a). Section 301 was enacted with the understanding that federal labor law doctrines would uniformly prevail over inconsistent state law, Teamsters v. Lucas Flour Co., 369 U.S. 95, 103-04, 82 S.Ct. 571, 576-77, 7 L.Ed.2d 593 (1962), and authorizes courts to fashion a body of federal law for the enforcement of collective bargaining agreements. Textile Workers v. Lincoln Mills, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972 (1957). The application of state law is therefore preempted in favor of federal labor law if resolution of a state-law claim requires interpretation of a collective bargaining agreement. Lingle v. Norge Div. of Magic Chef, Inc., --- U.S. ----, 108 S.Ct. 1877, 1885, 100 L.Ed.2d 410 (1988); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985).
 
 
 11
 In order to determine the preemptive effect of Sec. 301, however, a court must first examine the elements of the purported state-law remedy. See, e.g., Lingle, 108 S.Ct. at 1881-83 (Illinois tort of retaliatory discharge for filing a workers' compensation claim); International Brotherhood of Electrical Workers v. Hechler, 481 U.S. 851, 107 S.Ct. 2161, 2167-68, 95 L.Ed.2d 791 (1987) (Florida action for tortious breach-of-contract); Allis-Chalmers, 471 U.S. at 216-19, 105 S.Ct. at 1914-15 (Wisconsin tort for the bad-faith handling of an insurance claim). A colorable state-law cause of action is a predicate to a Sec. 301 preemption claim.
 
 
 12
 As discussed above, the district court's dismissal of Washington's federal claims against Union Carbide left only Washington's state-law claim for retaliatory discharge to be resolved. The district court did not err, however, in addressing whether Washington had stated a valid cause of action under state law. State claims which are wholly preempted by Sec. 301 constitute a well-recognized exception to the general rule that a federal claim must be stated on the face of the complaint. If Washington's purported state-law remedy had been completely preempted by Sec. 301, "any claim purportedly based on that preempted state law is considered, from its inception, a federal claim...." Caterpillar Inc. v. Williams, 482 U.S. 386, 107 S.Ct. 2425, 2430, 96 L.Ed.2d 318 (1987). The district court therefore had jurisdiction to address Washington's alleged state cause of action either as a pendent state claim here or, in a removed Sec. 301 case, as a means of determining its own jurisdiction. United States v. United Mine Workers of America, 330 U.S. 258, 292 n. 57, 67 S.Ct. 677, 695 n. 57, 91 L.Ed. 884 (1947).
 
 III.
 
 13
 We think it important to differentiate our analysis from that of the dissenting opinion. Under its alternative approach, federal courts generally must assume the validity of the purported state-law claim no matter how insubstantial, and must always proceed to the preemption inquiry no matter how uncertain. We reject this position. The dissenting opinion's approach is far less flexible than that of United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and leads to extended litigation in cases where the underlying state claims are meritless.
 
 
 14
 We favor instead an approach to Sec. 301 preemption cases that will leave district courts discretion to address either the underlying state claim or the Sec. 301 preemption inquiry as an initial matter. In some cases this discretionary approach will follow the thoughtful analysis found in the dissenting opinion. There may well be instances where a district court will wish to assume the validity of the purported state-law claim and proceed directly to the preemption inquiry. See United Ass'n of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry, Local No. 57 v. Bechtel Power Corp., 834 F.2d 884, 889 (10th Cir.1987). If the alleged state cause of action is preempted, the court may then address the Sec. 301 claim on its merits. If not preempted, the federal court may either dismiss the alleged state-law claim without prejudice or resolve it on its merits under the guidance of Gibbs. We do not dispute the validity of this approach. We do, however, take issue with the dissent's intimation that its analysis must be followed in all circumstances.
 
 
 15
 In our view, it lies within the discretion of the district court to dismiss state claims on their merits before resolving the preemption inquiry. Several factors ought to inform the discretion of the federal district courts under this analysis. Among them are whether the plaintiff has clearly failed to state a claim which is cognizable under state law; whether the purported state-law claim can be resolved without the need for much discovery or factual development; whether the complexity of the preemption inquiry would leave uncertain on appeal the existence of a federal question under Caterpillar, 107 S.Ct. at 2425; and whether the case originated in or was removed to federal court and the extent to which its resolution will require the parties to shuttle between the federal and state systems.
 
 
 16
 A discretionary approach to the Sec. 301 preemption inquiry has several advantages. First, it grants district courts the latitude to resolve a case promptly where the insubstantiality of the state claim is apparent. In this appeal, for example, we have the benefit of the district court's ruling that appellant's claim is insubstantial based on a careful exposition of West Virginia law. Second, the discretionary approach may spare the parties the burden of litigating a preemption issue where there is, in fact, no state claim to be preempted and where the underlying cause of action is patently without merit. Third, this approach provides the opportunity to have the case adjudicated in a single forum. Under the dissent's approach, this case would have to be decided by two courts rather than one despite the absence of any viable state cause of action. In a removed case, the litigants may be required to travel from state to federal court and back again to state court regardless of how frivolous the state claim may be.
 
 
 17
 We do not discount the desirability of having state courts resolve questions of state law which are genuinely unsettled or which hinge upon disputed facts. In such cases, a federal district court should resolve the Sec. 301 preemption inquiry at the outset of the litigation. Pendent jurisdiction is, however, a doctrine of discretion; Gibbs has never required that every pendent state claim be resolved on the merits by a state court. See Rosado v. Wyman, 397 U.S. 397, 402-05, 90 S.Ct. 1207, 1212-14, 25 L.Ed.2d 442 (1970). Many courts of appeals, for example, have upheld a district court's resolution of state-law claims even after all federal claims have been dismissed from the action. See Province v. Cleveland Press Pub. Co., 787 F.2d 1047, 1054-55 (6th Cir.1986); Union Nat. Bank of Little Rock v. Farmers Bank, 786 F.2d 881, 884 n. 2 (8th Cir.1986); New York v. Shore Realty Corp., 759 F.2d 1032, 1037 (2d Cir.1985); Ingram Corp. v. J. Ray McDermott & Co., 698 F.2d 1295, 1317-20 (5th Cir.1983); Meyer v. California and Hawaiian Sugar Co., 662 F.2d 637, 640 (9th Cir.1981); Lentino v. Fringe Employee Plans, Inc., 611 F.2d 474, 479-80 (3d Cir.1979); Transok Pipeline Co. v. Darks, 565 F.2d 1150, 1155 (10th Cir.1977); Galella v. Onassis, 487 F.2d 986, 996 (2d Cir.1973); Brunswick v. Regent, 463 F.2d 1205, 1206-07 (5th Cir.1972); Gray v. International Ass'n of Heat & Frost Insulators & Asbestos Workers, Local No. 51, 447 F.2d 1118, 1120 (6th Cir.1971).
 
 
 18
 In Gibbs, and in many of the above-mentioned cases, the federal question was resolved before the state claims were addressed. As we have noted, this is within the discretion of the district court. The substantiality of the federal question itself, however, not its place in the order of analysis, is what gives federal courts the power to resolve pendent state claims. Whether found in an original or removed case, the Sec. 301 inquiry presents a substantial federal question implicating important federal policies. See Caterpillar, 107 S.Ct. at 2425. Whether one addresses state claims on the merits before or after the preemption inquiry is therefore not dispositive under Gibbs. It is clear that a federal court may resolve a state-law claim "even if resolution of the state-law issues obviates the need to address the federal issues." Hillery v. Rushen, 720 F.2d 1132, 1140 (9th Cir.1983), citing Siler v. Louisville & Nashville R.R. Co., 213 U.S. 175, 191, 29 S.Ct. 451, 454, 53 L.Ed. 753 (1909). Considerations of judicial economy and fairness emphasized in the Gibbs decision suggest that a case should be resolved sooner rather than later, and that additional analytical steps need not be taken to reach an outcome that would, in any event, be clear.
 
 
 19
 As the Supreme Court has recognized, state-law claims which may be preempted by federal law are particularly well-suited for resolution in federal court. See Gibbs, 383 U.S. at 727, 86 S.Ct. at 1139. See also North Dakota v. Merchants Nat. Bank & Trust Co., 634 F.2d 368, 371 (8th Cir.1980). In such cases, the purported state-law claim is "so closely tied to questions of federal policy" that the argument for the exercise of pendent jurisdiction is a strong one. Gibbs, 383 U.S. at 727, 86 S.Ct. at 1139 (while the interrelationship of state and federal claims in preemption cases does not create federal question jurisdiction, "its existence is relevant to the exercise of discretion"). See also L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir.1984); Jackson v. Stinchcomb, 635 F.2d 462, 473 (5th Cir.1981). In Gibbs, as in this case, the federal claim was apparent from the face of the complaint. In a removed case, however, the federal claim may not have been stated on the face of the complaint. As indicated earlier, however, we believe that a federal court would have the power to address the merits of the state claim in order to determine its own jurisdiction under Caterpillar, 107 S.Ct. at 2425.
 
 
 20
 A district court, for instance, may logically wish to examine the elements of a state cause of action in order to resolve more precisely the preemption question. See Lingle, 108 S.Ct. at 1881-83. The Supreme Court took exactly this approach in construing the ERISA preemption provision, 29 U.S.C. Sec. 1144, and its statutory exceptions in Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 1554, 95 L.Ed.2d 39 (1987). A state tort, for example, may include an element of "bad faith" which is defined in state law by reference to a preexisting contractual duty. If the source of the duty is a collective bargaining agreement, the state tort is preempted by Sec. 301. Cf. Allis-Chalmers, 471 U.S. at 216-19, 105 S.Ct. at 1914-15 (scope of state tort derives from rights and obligations established by a collective bargaining agreement and therefore is preempted by Sec. 301 of the LMRA). The outcome of the preemption inquiry in such a case therefore depends on a careful examination of the elements of the purported state-law claims.
 
 
 21
 If the district court finds no viable state cause of action in the course of its preemption inquiry, judicial economy also counsels in favor of a dismissal of the state claim with prejudice. See Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139 (justification for the exercise of pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants"). At that point in the inquiry, the district court has expended judicial resources, has gained an understanding of the applicable state law, and should have at least the discretion, under the guidance of the above-mentioned factors, to dismiss the state-law claim with prejudice.
 
 
 22
 In the instant case, our approach imposes no inconvenience or unfairness on appellant; he originally brought suit in federal district court and it was there that the litigation was resolved. While there is certainly a comity interest at stake in Sec. 301 preemption cases, there also is an interest in seeing the judicial system, whether it be federal or state, best serve the litigants through a fair and prompt disposition of their claims. See Fed.R.Civ.P. 1. An approach that preserves the flexibility of Gibbs and the discretionary powers of district courts is preferable to one that dictates an initial preemption analysis even where it is perfectly clear that there is nothing to be preempted. Because the dissenting opinion would so often bring unnecessary steps into Sec. 301 analysis and additional courts into the resolution of Sec. 301 cases, we respectfully reject its position as litigious.
 
 IV.
 
 23
 We must still address the application of the discretionary approach in this case. The district court, the panel majority, and the dissenting opinion all agree that appellant's purported state-law claim has not been recognized in West Virginia. The dissenting opinion characterizes plaintiff's claim as "novel" and concedes that it "has not been specifically recognized in state law." The dissent then asserts, however, that it is beyond the discretion of a federal district court to dismiss the state-law claim with prejudice. Under this view, every cause of action in tort, no matter how speculative, presents an unsettled question on the frontier of state law which must be presented to state courts for resolution. We disagree. A state claim which has not been recognized by state courts may well be a settled question of state law. Federal courts are permitted under Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and Gibbs, 383 U.S. at 715, 86 S.Ct. at 1130, to rule upon state law as it presently exists and not to surmise or suggest its expansion.
 
 
 24
 We agree with the district court that appellant's purported state-law claim is clearly one that West Virginia has not recognized. Washington failed to state a valid cause of action for retaliatory discharge under West Virginia law; the invalidity of his alleged state claim can readily be determined on the face of the pleadings.
 
 
 25
 More specifically, a discharged employee in West Virginia has a cause of action in tort against his employer if his discharge contravenes a "substantial public policy" principle. Harless v. First Nat'l Bank in Fairmont, 162 W.Va. 116, 246 S.E.2d 270 (1978). As the district court recognized, however, the West Virginia courts have proceeded with "great caution" in applying public policy to wrongful discharge actions. The power to declare an employer's conduct as contrary to public policy is to be exercised with restraint, Yoho v. Triangle PWC, Inc., 336 S.E.2d 204, 209 (W.Va.1985), and with due deference to the West Virginia legislature as the primary organ of public policy in the state. See generally Collins v. AAA Homebuilders, Inc., 333 S.E.2d 792, 793 (W.Va.1985) (the West Virginia legislature "has the primary responsibility for translating public policy into law").
 
 
 26
 Prior cases in this area underscore the need for retaliatory discharge actions to rest upon a statutory articulation of public policy by the West Virginia legislature. See, e.g., Harless, 162 W.Va. 116, 246 S.E.2d at 275-76 (right of action for retaliatory discharge based upon the West Virginia Consumer Credit and Protection Act, W.Va.Code Sec. 46A-1-101, et seq.); Collins v. Elkay Mining Co., 371 S.E.2d 46, 47-49 (W.Va.1988), (right of action for retaliatory discharge recognized in favor of a mine employee who refused to violate the West Virginia Mine Safety Act, W.Va.Code Sec. 22A-1A-20); Shanholtz v. Monongahela Power Co., 165 W.Va. 305, 270 S.E.2d 178 (1980) (right of action for retaliatory discharge recognized in favor of an "at will" employee who was fired for filing a claim pursuant to the West Virginia Workers' Compensation Act, W.Va.Code Sec. 23-5-1); Cordle v. General Hugh Mercer Corp., 325 S.E.2d 111 (W.Va.1984) (right of action for retaliatory discharge based, in part, on W.Va Code Sec. 21-5-5b, which significantly restricts the use of polygraph testing by an employer in West Virginia); McClung v. Marion County Comm'n, 360 S.E.2d 221 (W.Va.1987) (right of action for retaliatory discharge recognized in favor of a county employee who was discharged for filing a state court action for overtime wages pursuant to W.Va.Code Sec. 21-5C-8). While the sources of public policy discussed in the above cases were not confined to the relevant statutes, see Cordle, 325 S.E.2d at 114, it is clear that the presence of these statutes was the critical factor in identifying the state's public policy. By contrast, in the absence of a statute, the West Virginia Supreme Court of Appeals held that a collective bargaining provision which terminated the seniority of an injured employee was not contrary to the state's public policy. Yoho, 336 S.E.2d at 209-10. There is no instance in which the West Virginia Supreme Court of Appeals has recognized a retaliatory discharge action of any sort in the absence of legislative recognition that such discharge contravenes the public policy of the state.
 
 
 27
 The above examples serve to illustrate the weakness of Washington's claim. Washington fails to identify, for example, the source of the public policy which supports his alleged state claim for retaliatory discharge. Although he asserts that such a public policy is "universally understood," he refers to no West Virginia statute or case generally recognizing a "public policy" in favor of private sector employees who file safety complaints with their employers or conferring upon them any private right of action.
 
 
 28
 Washington argued to the district court that the antidiscrimination provision of the West Virginia Occupational Safety and Health Act, W.Va.Code Sec. 21-3A-13, evidenced a public policy in favor of employees who file grievances or safety complaints. Significantly, however, the statute applies only to "public employers," which are defined as the "state or any department, division, bureau, board, council, agency or authority of the state." W.Va.Code Sec. 21-3A-2(d). Moreover, a public employee's sole means of redress under the statute is to file an administrative complaint within thirty days of the alleged violation of the Act. W.Va.Code Sec. 21-3A-13(b). Any investigation and subsequent court enforcement of the Act's provisions must be commenced by the state labor commissioner. Id. While Washington's right to report safety violations was protected by the collective bargaining agreement, we agree with the district court that Washington could not state a valid cause of action based on the West Virginia Occupational Safety and Health Act, W.Va.Code Sec. 21-3A-13.
 
 
 29
 Whether protection for Washington should exist in tort is, of course, debatable. A tort action for retaliatory discharge involves a delicate balance between an employer's interest in promptly terminating unsatisfactory employees and an employee's interest in not being discharged without justification. Employers subject to retaliatory discharge actions may be reluctant to release employees for legitimate business reasons; employees without the protection of such actions may be equally reluctant to blow a salutary whistle. That debate is at the core of state law. When an issue of public policy is "fairly debatable or controversial in nature," the West Virginia courts will defer to the judgment of the West Virginia legislature, Yoho, 336 S.E.2d at 209. As the district court found, it is clear that statutory recognition of an action for retaliatory discharge for reporting safety violations has not been generally conferred in West Virginia.
 
 V.
 
 30
 In the absence of a state cause of action, it is, of course, unnecessary to inquire whether Sec. 301 of the LMRA would apply to preempt the state-law claim. Based on the foregoing principles, the district court's grant of summary judgment for defendant is
 
 
 31
 AFFIRMED.
 
 PHILLIPS, Circuit Judge, dissenting:
 
 32
 This case presents an important issue of the proper procedural approach to take in deciding Sec. 301 preemption issues under the special circumstances presented by an unsettled condition of state law. That problem has not been definitively addressed either by the Supreme Court or this court, and it is a problem that will undoubtedly recur. For that reason and because I disagree with the majority's approach and consequently with the result it reaches, I respectfully dissent.
 
 
 33
 In general terms I disagree with the majority's perception that in such a situation the federal courts should resolve the unsettled question of the pendent state-law claim's cognizability under state law "before resolving the Sec. 301 preemption inquiry." At 958. For reasons that follow, I think this is not the appropriate procedure; that instead the federal courts may and should first decide the preemption issue, reserving the question of how and by what court the state-law claim should be resolved if it is found not preempted.
 
 
 34
 * The issue posed for a federal court by the assertion that a union employee's state-law claim against his or her employer is preempted by Sec. 301 of the LMRA is whether "resolution of [the] state-law claim depends upon the meaning of a collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., --- U.S. at ----, 108 S.Ct. 1877, 1881, 100 L.Ed.2d 410 (1988). In the course of clarifying the proper way to address that issue by focussing upon the state claim's "independence," id. at 1882 & n. 7, the Lingle Court illustrated the obvious point that to answer the ultimate issue the federal court has first to identify the substantive elements of the state-law claim. Id. Only so can the ultimate issue whether that claim can be resolved independently of the collective bargaining agreement's meaning be addressed.
 
 
 35
 When, as in Lingle itself, and as will ordinarily be the case, the specific state-law claim is one that has been clearly recognized, fleshed out, and applied in state law, that first step is simple. As did the Lingle Court, a court merely looks to the relevant sources--state statutes and judicial decisions--defining and applying the elements of the claim. See id. at 1881-82. It can then address the next, and ultimate, legal question, whether proof of any of those elements will depend upon what a collective bargaining agreement might mean in relevant part.[1]
 
 
 36
 The problem here is of course that we do not have that ordinary case. Here there is a prior question--and a genuine one--whether the state-law claim as pleaded is one cognizable under state law. The problem this presents is one of first impression with us and there is no direct Supreme Court precedent to guide us.[2] It is upon the way that this unusual problem should be handled that I differ from the majority and would reach a different result than the majority reaches.
 
 
 37
 The majority's solution is for the federal court to decide the open question of state law--whether the state-law claim as pleaded is one cognizable under state law--as an appropriate exercise of its "discretion." At 958.[3] On this view of things, if the determination is that no such claim exists under state law, two things result. First, the decision operates as a final judgment dismissing the state claim on the merits. Second, it avoids any need to address the ultimate preemption issue since it has now been determined that there is no state claim to be preempted. That of course is the result in fact reached by the majority here. Presumably, under this approach, if the determination were to the contrary--that the state-law claim was one recognized in state law--the normal preemption inquiry into the "independence" of the claim as pleaded would then proceed, with preemption turning on the outcome.
 
 
 38
 As the majority tacitly recognizes, this approach is not legally compelled.[4] As indicated, I do not think it is the most appropriate and legally sound approach available. The more appropriate approach where, as here, the state-law claim is a pendent claim, would be to reserve its resolution while deciding the preemption issue, reserving the option to dismiss the claim without prejudice under the traditional principles of United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), if it be found not preempted.[5] To follow this course requires no more than a simple adaptation of the Sec. 301 preemption inquiry to the special problem presented when the state-law claim whose preemption is in issue is one whose existence or exact scope is not established under state law.
 
 
 39
 The first thing to realize is that though a federal court in that circumstance cannot avoid deciding the preemption issue, it does not have to decide the open question of state law and resolve the state claim to do so. All of the purposes of the Sec. 301 preemption inquiry can be achieved and all the relevant federal interests can be served by simply assuming without deciding that the claim as pleaded is a viable one under state law. The inquiry can then proceed in the normal way, looking to the claim as pleaded for its elements, and asking whether proof of any of those elements will depend on an interpretation of the collective bargaining agreement. If the answer is "yes," the state-law claim as pleaded is preempted whether or not cognizable under state law, and that open question therefore need never be addressed. If the answer is "no," so that preemption does not result, the court is simply then in the position, frequently encountered, of having before it a state-law pendent claim which in its discretion it may decide on the merits or dismiss without prejudice under guidance of the Gibbs factors.
 
 
 40
 The virtue of this approach is simply that it preserves the option of abstaining from resolution of a pendent state-law claim found not to be preempted rather than cutting off that option by undertaking federal resolution of the claim under circumstances where federal abstention is the more appropriate course. Because, as indicated, threshold federal resolution is not forced by the need to decide the preemption issue, the option to abstain if preemption is not found obviously may and should be preserved in order to serve the interests of comity and federalism that underlie Gibbs.
 
 
 41
 Though, as indicated, neither the Supreme Court nor this court has directly addressed this problem, several other courts of appeals recently have confronted it. The approaches taken by those courts, though differing in detail, generally support that one here proposed. None of the courts, so far as I can tell, has taken the approach of the majority here which, in effect, finesses the preemption issue entirely by rejecting the state claim on the merits at the very threshold, "before resolving the Sec. 301 preemption inquiry." At 958. All, instead, complete the preemption inquiry without purporting to decide the state-law claim on the merits.
 
 
 42
 Three different approaches have been taken by these courts. In one, the general cognizability of the claim as pleaded under state law has been assumed, but its unsettled contours in state law have been "hypothesized" by a detailed analysis of relevant state law sources. See, e.g., Jackson v. Liquid Carbonic Corp., 863 F.2d 111 (1st Cir.1988) ("independence" of novel state-law claim challenging employee drug testing analyzed by "hypothesizing" "parameters" of state privacy law).
 
 
 43
 In another, the cognizability of the claim as pleaded has been assumed, without any effort to confirm either its existence or its contours by "finding" or even "hypothesizing" the likely state of state law. See, e.g., United Ass'n of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry, Local No. 57 v. Bechtel Power Corp., 834 F.2d 884, 889 (10th Cir.1987) (where state courts had not addressed either the existence or the elements of a "novel" state-law claim, preemption inquiry conducted as "if such a cause of action does exist").
 
 
 44
 Under both of these approaches, resolution of the state-law claim on the merits has been avoided pending outcome of the preemption inquiry. Where preemption of the claim as assumed or hypothesized has been found, that has of course disposed of the state-law claim. See Jackson, 863 F.2d at 121. Where preemption has not been found, the possibility of deference to state court resolution has been preserved. See Bechtel, 834 F.2d at 890 (removed state claim remanded after being found not preempted).
 
 
 45
 In a third approach--the most significant because it involves a situation in which the federal court actually believed, as does the majority here, that the state-law claim as pleaded was not one cognizable under state law--the court nevertheless did not dismiss it on the merits, but instead found it necessarily preempted as being only cognizable under Sec. 301. See, e.g., Laws v. Calmat, 852 F.2d 430, 434 n. 5 (9th Cir.1988) (because novel state-law claim not "an established or recognized state-law claim," necessarily preempted by Sec. 301).
 
 
 46
 The common perception underlying all these approaches is that advanced here as the appropriate one. It is this. A federal court confronted with the contention that a removed or pendent state-law claim is preempted by Sec. 301 should decide the preemption issue without regard to the perceived merits of the state-law claim, the matter of that claim's proper disposition under state law being presented only if it is first found not preempted. Where the state-law claim is clearly recognized and its contours established in state law, established state law is the proper reference for making the preemption inquiry. Where the contours or very existence of the state-law claim is not clearly established in state law sources, either the claim as pleaded or as "hypothesized" from available state law sources is the proper reference. Even where the state-law claim is found to be one not recognized in state law, it should nevertheless not be rejected on the merits under state law, but found perforce preempted.[6]
 
 II
 
 47
 It remains to indicate how I would apply this approach here.
 
 
 48
 * I would proceed on a hybrid of the approaches taken by the Tenth Circuit in Bechtel and the First Circuit in Jackson. That is to say, I would simply assume for purposes of the preemption inquiry that the state-law claim here, though "novel" in the sense that it has not been specifically recognized in state law, is a cognizable one. As the majority's extensive effort to find state law (or non-law) on the subject demonstrates, the existence of a general tort claim for retaliatory discharge is well-established in West Virginia decisional law. See at 962-63. The only open question (and of course it is potentially dispositive on the merits of the state claim if it is not preempted) is whether the West Virginia courts would recognize the specific "public policy principle" whose violation is alleged as an essential element of the claim here in issue. For perfectly obvious reasons, that is a question that should if at all possible be left for first instance resolution by the state courts. As indicated above, the option to do so can readily be preserved while making the preemption inquiry on the assumption of the specific claim's cognizability.
 
 
 49
 Where, as here, one can indeed identify the exact contours of the state-law claim, assuming only its cognizability under the particular facts alleged, the preemption inquiry into that claim's "independence" under Lingle is relatively easy and straightforward. If this claim is cognizable, its proof would require a showing (1) that the claimant was discharged (2) in retaliation (3) for conduct protected by a "substantial public policy principle" expressed in state law. See, e.g., Collins v. Elkay Mining Co., 371 S.E.2d 46 (W.Va.1988); McClung v. Marion County Comm'n, 360 S.E.2d 221 (W.Va.1987); Cordle v. General Hugh Mercer Corp., 325 S.E.2d 111 (W.Va.1984); Shanholtz v. Monongahela Power Co., 165 W.Va. 305, 270 S.E.2d 178 (1980); Harless v. First National Bank in Fairmont, 162 W.Va. 116, 246 S.E.2d 270 (1978).
 
 
 50
 With the elements of the claim as pleaded so identified, it is plain that under the Lingle analysis, any particular claim of retaliatory discharge under West Virginia law may be resolved independently of and without reference to any relevant collective bargaining agreement. The elements of the state tort could in no way be dependent upon or determined by any rights or duties imposed by such an agreement. Any duty not to discharge under state law will be found (or found not to exist) by reference to a specific public policy principle grounded exclusively in state law sources. See Lingle, 108 S.Ct. at 1881-82 (comparable analysis of independence of Illinois retaliatory discharge claim). The fact that resolution of the state-law claim (including determination of its existence vel non ) may overlap some of the factual inquiry conducted in resolution of a parallel grievance under the collective bargaining agreement is irrelevant. See id. at 1883.
 
 B
 
 51
 On this analysis, I would therefore find the state claim as pleaded not preempted by Sec. 301, and turn to the question of how we should now deal with that sole remaining claim.
 
 
 52
 Despite the determination that it is not preempted, we of course would still have jurisdiction to decide it as a pendent state claim.[7] I would not do that, however, because it is classically the kind of pendent state claim that should be dismissed without prejudice, leaving its resolution (if the claimant desires to pursue it) to the state courts. All the Gibbs criteria for this disposition are present. As the Supreme Court has recently emphasized:
 
 
 53
 Under Gibbs, a federal court should consider and weigh in every case, and at every state of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims. When the balance of these factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.
 
 
 54
 Carnegie-Mellon University v. Cohill, 484 U.S. 343, 108 S.Ct. 614, 618-19, 98 L.Ed.2d 720 (1988).
 
 
 55
 Here, all the federal claims have been finally dismissed by the district court. The pendent state claim alone remains. Dismissal of the federal claim came early in the litigation, by summary judgment. Compelling concerns of comity counsel abstention by the federal courts from deciding the important, unsettled issue of state law on which this claim is based.[8] The claimant faces no statute of limitations problems because of the saving provisions of W.Va.Code Sec. 55-2-18, interpreted in Stare v. Pearcy, 617 F.2d 43, 46 (4th Cir.1980). No federal interest, other than general interests in repose and finality, counsel federal resolution of this state-law question. Here those interests simply do not outweigh the more specific interests of the claimant and the state courts in having that decision made in the first instance by the state courts.
 
 
 56
 I would reverse the district court's dismissal of the state-law claim on the merits, and remand with directions to dismiss the claim without prejudice.
 
 
 
 [1]
 A process that could, but need not necessarily, also require looking at the collective bargaining agreement far enough to determine how it might define or give scope to rights or duties integral to the state claim. This would seem to be required only when that necessity is manifest from an analysis of the essential elements of the state-law claim. See Lingle, 108 S.Ct. at 1881 (describing this as the analytical process required in Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985))
 
 
 [2]
 In each of the principal Supreme Court cases dealing with the preemption of removed or pendent state-law claims, Lingle; Caterpillar, Inc. v. Williams, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); IBEW, AFL-CIO v. Hechler, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the state-law claim directly in issue was one whose existence and essential elements were indisputably established under state law and could simply be referred to by the federal court as there defined
 
 
 [3]
 There is no doubt of the federal court's raw power to decide the claim on the merits where, as here, the state-law claim is a pendent claim in an original federal action. As to such a state-law claim jurisdiction would exist irrespective of the preemption decision: under the pendent jurisdiction if not preempted; under federal question jurisdiction if transmuted into a federal claim by preemption. (The same of course would be true with respect to a state-law claim removed on diversity grounds, see, e.g., Lingle, 108 S.Ct. 1877.) The question is not whether there is jurisdiction to resolve the state-law claim--there is, one way or the other--but whether the power should be exercised here. The majority is simply mistaken in saying, slip op. at 13, that this dissenting opinion "asserts that it is beyond the discretion of a federal district court to dismiss the state-law claim with prejudice." Central to the whole argument here is the recognition that the power to do so exists, but this is coupled with the contention that the option of exercising it should simply be reserved pending prior resolution of the preemption inquiry. Indeed, the majority seems largely to miss the significance of my obvious recognition that such "discretion" exists throughout its extended discussion of Gibbs discretion and the proper time to exercise it
 
 
 [4]
 See note 3 supra
 
 
 [5]
 The same approach would be appropriate in the case of a removed state-law claim, with remand to the state court being the option retained in case the claim is found not preempted. See, e.g., Caterpillar, 107 S.Ct. 2425; United Ass'n of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry, Local No. 57 v. Bechtel Power Corp., 834 F.2d 884 (10th Cir.1987); Paige v. Henry J. Kaiser Co., 826 F.2d 857 (9th Cir.1987); Baldracchi v. Pratt & Whitney Aircraft Div., 814 F.2d 102 (2d Cir.1987). See also Jackson v. Liquid Carbonic Corp., 863 F.2d 111, 124 (1st Cir.1988) (Bownes, J., dissenting)
 
 
 [6]
 My own strong preference in general would be for the Bechtel approach, which avoids any effort to resolve unsettled questions of state law going either to the existence vel non or the exact contours of the state-law claim as pleaded. Where, however, the claim's general cognizability is established in state law and the only unsettled questions relate to its applicability to the particular circumstances pleaded or to its exact contours, reference to relevant aspects of established state law might certainly be appropriate and helpful in conducting the preemption inquiry, the course taken in Jackson. I would depart from the general approach of assuming general cognizability, and possibly "hypothesizing" unsettled contours, only in the face of a clear indication that the state-law claim had been affirmatively rejected in state law, i.e., I would never find it not cognizable merely for lack of affirmative recognition as did Calmat. And even where it had been affirmatively rejected, I would follow the Calmat approach of finding the state-law claim thereby perforce preempted rather than rejecting it on the merits. The ordering principle is to leave the state law question as open and undisturbed as is possible while necessarily deciding the federal preemption issue
 
 
 [7]
 See note 3 above
 
 
 [8]
 Because it bears upon the propriety of Gibbs abstention, I should note that on my assessment of West Virginia law, it is by no means as clear as the majority asserts that Washington "fail[s] to state a valid cause of action for retaliatory discharge under West Virginia law." Slip op. at 14. First, the Supreme Court of West Virginia has on occasion indicated that in searching for articulations of "public policy" as an essential element of "retaliatory discharge" claims, the courts are not confined to statutory sources
 "The sources determinative of public policy are, among others, our federal and state constitutions, our public statutes, our judicial decisions, the applicable principles of the common law, the acknowledged prevailing concepts of the federal and state governments relating to and affecting the safety, health, morals and general welfare of the people for whom government--with us--is factually established."
 Cordle v. General Hugh Mercer Corp., 325 S.E.2d 111, 114 (W.Va.1984) (quoting Allen v. Commercial Casualty Ins. Co., 37 A.2d 37, 38-39 (N.J.1944)). In Cordle, for example, the court ruled that it was against state public policy for an employer to require an employee to submit to a polygraph test as a condition of employment. Id. at 117. The court noted that a statute recently had been passed to similar effect, see W.Va.Code Sec. 21-5-5b, but observed that this statute was not dispositive as it was promulgated after the period in question before the court. Cordle, 325 S.E.2d at 113 n. 6. Instead, the court held that the statute itself was "the embodiment of a 'recognized facet of public policy' in this State." Id. at 117 (citation omitted).
 Second, it is not plain, in any event, that no statutory source exists in West Virginia law to support Washington's claim. The majority fails to note the existence of West Virginia's statute on employment safety, which provides in relevant part:
 Every employer shall furnish employment which shall be reasonably safe for the employees therein engaged and shall furnish and use safety devices and safeguards, and shall adopt and use methods and processes reasonably adequate to render employment and the place of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees....
 W.Va.Code Sec. 21-3-1. Federal and West Virginia state courts have several times recognized and applied this statute as one imposing, as a matter of state policy, an obligation upon employers to maintain reasonably safe employment conditions. See, e.g., Hamrick v. Aerojet-General Corp., Indus. Systems Div., 528 F.2d 65 (4th Cir.1975); Davis v. Monsanto Co., 627 F.Supp. 418, 422 (S.D.W.Va.1986); Pack v. Van Meter, 354 S.E.2d 581, 585 (W.Va.1986) (citing cases). It seems to me no great leap to find in it a public policy that would be violated by an employer's conduct that retaliated for an employee's effort to enforce that obligation.
 That the question of the claim's cognizability is therefore not only unsettled but obviously arguable under extant state law is, as indicated, irrelevant to a proper resolution of the preemption issue. But it is highly relevant to the question of abstention from federal resolution of that unsettled issue of state law, and militates heavily in favor of abstention under Gibbs.