**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BOBBY JUNIOR PRICE,
<u>Plaintiff-Appellant,</u>

v.

GOALS COAL COMPANY,

No. 97-1710

<u>Defendant-Appellee.</u>

WEST VIRGINIA HUMAN RIGHTS
COMMISSION,
<u>Amicus Curiae.</u>

Appeal from the United States District Court

for the Southern District of West Virginia, at Beckley.
Joseph Robert Goodwin, District Judge.
(CA-96-1932-5)

Argued: October 28, 1997

Decided: August 13, 1998

Before RUSSELL* and WIDENER, Circuit Judges, and
TRAXLER, United States District Judge for the

District of South Carolina, sitting by designation.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

*Judge Russell heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

**COUNSEL**

**ARGUED:** Timothy Richard Conaway, Madison, West Virginia, for Appellant. Albert F. Sebok, JACKSON & KELLY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Daniel L. Stickler, Kelley L. Mount, JACKSON & KELLY, Charleston, West Virginia, for Appellee. Darrell V. McGraw, Jr., Attorney General, Mary Catherine Buchmelter, Deputy Attorney General, Paul R. Sheridan, Senior Assistant Attorney General, Civil Rights Division, Charleston, West Virginia, for Amicus Curiae.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Bobby Price ("Price") filed suit in West Virginia state court against Goals Coal Company ("Goals"), alleging that Goals discriminated against him on the basis of his age in violation of the West Virginia Human Rights Act (WVHRA). See W.Va. Code§ 5-11-9 (1992). Goals removed the action to federal court, contending that Price's WVHRA claim was preempted by § 301 of the Labor Management Relations Act (LMRA). See 29 U.S.C.A. § 185 (West 1978). Price denied that his state claim was preempted by the LMRA and moved to remand the suit to state court. The district court, believing the underlying state law claim to be clearly untenable, bypassed the preemption analysis and dismissed Price's case. Because we find that Price's claim involves an issue which is genuinely unsettled under West Virginia law, we believe the question of preemption must be decided before the merits of the state law claim can be reached. Upon examination, we find the claim is not preempted and that it should be litigated in the state court of West Virginia. Accordingly, we vacate the district court's order and return the case to the district court with instructions to remand the case to the West Virginia state court.

2

I.

In 1994, Price, age 61, was employed by Peabody Coal Company ("Peabody") in Raleigh County, West Virginia, as a bulldozer operator at a coal preparation plant. As a bargaining unit employee at Peabody, Price was represented by the United Mine Workers of America ("the Union"), and his employment was covered by the National Bituminous Coal Wage Agreement of 1993, a collective bargaining agreement between Peabody and the Union. In relevant part, the collective bargaining agreement provides that "[n]either the Employer nor the Union shall discriminate against any Employee or with regard to the terms or the availability of classified employment on the basis of race, creed, national origin, sex, age, political activity, whether intra-Union or otherwise." J.A. 72. The agreement also provides that "[d]isputes arising under this Agreement shall be resolved" pursuant to the mandatory grievance and arbitration procedures set forth in the agreement. J.A. 66.

In October 1994, all 35 employees of the Peabody plant were laid off and 34 completed panel recall forms.[1] The plant was then sold to defendant Goals. As part of the purchase, Goals assumed Peabody's obligations under the collective bargaining agreement and agreed to consider the former employees of Peabody for employment. On his recall form, Price indicated that he only wished to be recalled for a bulldozer operator position. According to Goals, the only available bulldozer operator position was filled by a 46-year-old former Peabody employee. Goals further asserts that Price was not hired because he failed a performance test of his ability to operate the bulldozer.

When Goals failed to recall Price for the bulldozer operator position, Price filed a grievance, claiming he should not have been required to submit to performance testing and, in any event, that he should have received a passing grade. Price did not allege or submit an age discrimination claim at the grievance stage. When the claim reached arbitration, Price first raised his claim of age discrimination. However, the arbitrator refused to consider it due to Price's failure to

_____

[1] Under the collective bargaining agreement, employees laid off from covered operations could complete panel recall forms listing the jobs they wanted to be considered for in the event of vacancies.

3

assert it in his grievance. The arbitrator ruled that Goals did not violate the collective bargaining agreement by requiring Price to submit to a performance test or in concluding that Price failed the test.

Price subsequently filed this action in the Circuit Court of Raleigh County, West Virginia, against Goals, asserting an age discrimination claim pursuant to the WVHRA. The complaint made no reference to the collective bargaining agreement. Goals removed the case to the district court on the ground that Price's age discrimination claim was subject to mandatory arbitration as provided for in the collective bargaining agreement and, therefore, arose under and was preempted by § 301 of the LMRA. Price moved to remand the case to state court, asserting that his WVHRA claim was not preempted by§ 301 and, therefore, that there was no federal question jurisdiction.

The district court, relying primarily upon our decision in Austin v. Owens-Brockway Glass Container, Inc., 78 F.3d 875 (4th Cir. 1996), entered an order dismissing the complaint, without prejudice, for Price's failure to present his age discrimination claim through the mandatory grievance and arbitration procedures called for by the collective bargaining agreement. Having so concluded, the district court found it lacked subject matter jurisdiction to address the preemption issue under § 301 of the LMRA. Accordingly, the district court dismissed Price's motion to remand as moot.

II.

Price's action was removed to the district court solely on the basis of purported federal question jurisdiction. In his motion to remand, Price asserted that his WVHRA claim was not preempted by the LMRA and, therefore, contended that the case must be remanded for lack of a federal question.

The presence of federal question jurisdiction is ordinarily determined by the "well-pleaded complaint" rule, which provides that the federal question must be "presented on the face of the plaintiff's properly pleaded complaint" to confer jurisdiction. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987). Thus, "the plaintiff is the master of the complaint and may avoid federal jurisdiction by relying exclu-

sively on state law." Childers v. Chesapeake & Potomac Tel. Co., 881 F.2d 1259, 1261 (4th Cir. 1989).

"The doctrine of `complete preemption,' however, serves as an exception to the well-pleaded complaint rule." Id. This "complete preemption exception to the well-pleaded complaint rule`is applied primarily in cases raising claims preempted by § 301 of the LMRA.'" Id. at 1261-62 (quoting Caterpillar, 482 U.S. at 393). As this court has instructed:

> State claims which are wholly preempted by § 301 constitute a well-recognized exception to the general rule that a federal claim must be stated on the face of the complaint. If [plaintiff's] purported state-law remedy had been completely preempted by § 301, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim.... The district court therefore had jurisdiction to address [plaintiff's] alleged state cause of action either as a pendent state claim here or, in a removed § 301 case, as a means of determining its own jurisdiction.

Washington v. Union Carbide Corp., 870 F.2d 957, 959-60 (4th Cir. 1989) (internal quotation marks and citation omitted); see Childers, 881 F.2d at 1261-62. Accordingly, if Price's WVHRA claim is preempted by the LMRA, a federal question exists and removal to the district court was appropriate.

Furthermore, federal district courts have discretion, in "appropriate case[s], to address the state claim on the merits before resolving the § 301 preemption inquiry." Washington , 870 F.2d at 958; see Childers, 881 F.2d at 1262. Specifically, if the removed state claim is "patently without merit," the district court may dismiss the claim on the merits without reaching the question of whether § 301 preempts the claim. Childers, 881 F.2d at 1267. This discretion, however, is limited:

> The discretion of district courts to dismiss state claims is limited to those whose lack of merit is apparent. Where the plaintiff appears to state a claim under state law, a federal district court would be well-advised to proceed to the § 301

5

> preemption inquiry and, if the state claim is not preempted, to remand the entire action to state court. Where the complaint, however, plainly fails to state a cause of action under state law, it is open to the federal court to dismiss it.

Id. at 1262. In addition, if the issue of state law is "genuinely unsettled" or "hinge[s] upon disputed facts," the district court "should resolve the § 301 preemption inquiry at the outset of the litigation." Washington, 870 F.2d at 961.

In the instant case, the district court did not address the preemption or well-pleaded complaint issues raised by Price's motion to remand. Instead, the district court dismissed Price's WVHRA claim, without prejudice, for his failure to submit the claim to arbitration under the collective bargaining agreement. Accordingly, we turn to the issue of whether the district court properly dismissed Price's WVHRA claim on this basis, and then, if necessary, to the issue of whether his claim is preempted by § 301 of the LMRA.

A.

Price contends the district court erred in dismissing his WVHRA claim because West Virginia case law indicates it would not enforce an arbitration agreement to preclude a WVHRA claim and, at a minimum, that the issue of whether West Virginia would enforce arbitration provisions in a collective bargaining agreement to preclude a state law action for violation of its Human Rights Act is "genuinely unsettled." We agree.

Since the district court relied upon our decision in Austin to dismiss Price's state law claim, we begin our analysis of this issue with a review of federal court precedent concerning the effect of compulsory arbitration agreements on federal anti discrimination lawsuits. In 1974, the United States Supreme Court held that an employee's statutory right to pursue a racial discrimination claim under Title VII was not foreclosed by his prior submission of the claim to arbitration under a nondiscrimination clause of a collective bargaining agreement. See Alexander v. Gardner-Denver Co., 415 U.S. 36 (1974). In Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991), however, the Supreme Court held that an employee's age discrimination

6

claim under the Age Discrimination in Employment Act (ADEA) was subject to a compulsory arbitration agreement contained in his securities registration application. In its motion to compel arbitration, the employer had relied upon the arbitration agreement and the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et. seq. Noting federal policy favoring arbitration in the FAA and its purpose to place arbitration agreements on the same footing as other contracts, the Supreme Court held that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." Gilmer, 500 U.S. at 26. The Court noted that "[a]lthough all statutory claims may not be appropriate for arbitration, [h]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." Id. (internal quotation marks omitted). "[T]he burden is on [the employee] to show that Congress intended to preclude a waiver of a judicial forum" for the statutory claim. Id.  "If such an intention exists, it will be discoverable in the text of the [statute], its legislative history, or an `inherent conflict' between arbitration and the [statute's] underlying purposes." Id. The Court went on to conclude that there was no such Congressional intent underlying the ADEA, rendering the employee's claim pursuant to that federal statute subject to the compulsory arbitration bargained for in the contract.

In Austin, this court upheld the grant of summary judgment to an employer for its employee's failure to submit gender and disability discrimination claims under Title VII and the ADA to mandatory arbitration under a collective bargaining agreement. See Austin, 78 F.3d at 885-86. Although the FAA was not applicable, we noted that Gilmer "made clear that agreements to arbitrate [federal] statutory claims are enforceable," Austin, 78 F.3d at 880, and that, unless Congress intended to prohibit arbitration of a federal statutory claim, the parties will be held to their agreement, see id . at 880-81. Thus, voluntary and valid agreements to arbitrate federal anti-discrimination claims will be enforced "[w]hether the dispute arises under a contract of employment growing out of securities registration application, a simple employment contract, or a collective bargaining agreement...." Id. at 885.

The instant case, unlike Austin, does not involve the alleged violation of a federal anti-discrimination statute. Rather, it involves the

alleged violation of a state anti-discrimination statute. Nevertheless, using Austin and its principles as a guide, the district court in this case considered the text and legislative history of the WVHRA and concluded that the West Virginia legislature did not, in enacting the WVHRA, intend to preclude arbitration under a collective bargaining agreement. Thus, the district court concluded that the action must be dismissed without prejudice for Price's failure to submit his state statutory age discrimination claim to arbitration.

This court, however, is not convinced that the West Virginia courts would reach the same conclusion. First, Gilmer and Austin involved instances in which the agreement at issue contained a specific agreement to arbitrate statutory claims, which may not apply to Price's agreement.[2] Second, neither Gilmer nor Austin involved a question of state claim preemption under § 301 of the LMRA. Rather, both cases involved claims asserted under federal anti-discrimination statutes and the federal policy favoring arbitration of employment disputes.

More compelling, however, is the fact that current West Virginia case law indicates that its legislature may indeed have intended to preclude mandatory arbitration of claims arising under the WVHRA. Prior to the decisions in Gilmer and Austin, the West Virginia Supreme Court addressed the issue of "whether an agreement to arbitrate contained in an employment contract can usurp certain statutory rights given to an individual." Copley v. NCR Corp., 394 S.E.2d 751, 755 (W.Va. 1990). In Copley, the employee alleged he had been the victim of age and sex discrimination, and the employer moved to compel arbitration pursuant to the terms in his individual employment contract. The West Virginia Supreme Court held that "under West Virginia law, an arbitration clause in an employment contract cannot defeat a human rights action filed by the claimant pursuant to [the WVHRA]." Id. at 756.

In so holding, the court relied heavily upon its prior decision in Davis v. Kitt Energy Corp., 365 S.E.2d 82 (W.Va. 1987). Davis sued

_____

**2** The issue of whether the language contained in the arbitration agreement is, in the first instance, broad enough to encompass mandatory arbitration of state human rights act claims is not before us. Cf. Brown v. Trans World Airlines, 127 F.3d 337 (4th Cir. 1997).

8

his employer for an alleged violation of a West Virginia anti-discrimination statute after he was removed from a mine safety committee for reporting safety hazards. The employer claimed Davis was precluded from suing by the arbitration provisions of his collective bargaining agreement. The court rejected the employer's claim, placing "great reliance" upon the United States Supreme Court decision in Alexander. See Davis, 365 S.E.2d at 88-90; Copley, 394 S.E.2d at 755-56.

Goals contends Alexander has been effectively overruled by Gilmer, and that if called upon to address the question today, the West Virginia Supreme Court would effectively overrule its decisions in Copley and Davis and follow this court's holding in Austin. Price argues that under Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), federal courts only have constitutional authority "to rule upon state law as it presently exists and not to surmise or suggest its expansion." Washington, 870 F.2d at 962; see also Childers, 881 F.2d at 1265. This limitation, Price argues, would require reversal of the district court's interpretation of West Virginia law.[3]

We need not decide whether the district court correctly interpreted or predicted West Virginia law, however. Although the district court had discretion to evaluate the validity of the underlying WVHRA claim in the course of conducting its preemption analysis, Price's WVHRA claim is not "patently without merit." Washington, 870 F.2d at 960. At a minimum, the question of whether West Virginia would enforce an arbitration agreement to prohibit a judicial remedy for its

_____

[3] Price further contends that the West Virginia Supreme Court evinced an intent to stand by its decisions in Copley and Davis after Gilmer and Austin were decided. Specifically, Price references the West Virginia Supreme Court's decision in Vest v. Board of Educ., 455 S.E.2d 781 (W.Va. 1995). In Vest, the court addressed the question of whether a teacher's WVHRA claim for pregnancy and sex discrimination was precluded by a prior grievance proceeding conducted by a local school board. Citing both Davis and Alexander in its opinion, the Vest court ultimately concluded that the WVHRA claim was not precluded by the prior grievance hearing, noting that "we particularly remain mindful of the primacy that the Legislature has accorded to eliminating invidious discrimination in this State." Vest, 455 S.E.2d at 787.

9

WVHRA claims is "genuinely unsettled," id. at 961, and the West Virginia courts should, in the first instance, decide whether it would overrule its Copley decision and follow the reasoning expounded by the Supreme Court in Gilmer and this court in Austin. Accordingly, we conclude that the district court erred in dismissing Price's action in lieu of addressing the preemption issue raised by Price's motion to remand.

B.

Where, as here, a state law claim may have merit under state law, a district court may not summarily dismiss the claim, but must instead determine whether the claim is preempted by § 301 of the LMRA and, therefore, whether it was properly removed to federal court. Turning to the question of preemption, we conclude that Price's WVHRA claim is not preempted by § 301 of the LMRA and, there-fore, that removal to the federal court was not appropriate under the complete preemption exception to the well-pleaded complaint rule.**4**

Section 301 of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties...." 29 U.S.C.A. § 185(a). Section 301 is "more than jurisdictional." Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 451 (1957). "[I]t authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements and includes within that fed-eral law specific performance of promises to arbitrate grievances under collective bargaining agreements." Id. at 451.

In addition, "[t]o ensure uniform interpretation of collective-bargaining agreements and to protect the power of arbitrators, § 301 has been found to displace entirely any state cause of action for viola-tion of contracts between an employer and a labor organization. Accordingly, state law does not exist as an independent source of pri-vate rights to enforce collective-bargaining contracts." Davis v. Bell Atlantic -- W.Va., Inc., 110 F.3d 245, 247 (4th Cir. 1997) (internal

_____

**4** Since both parties have briefed the preemption issue, remand to the district court on this issue is unnecessary.

quotation marks omitted). "Moreover, the Supreme Court has refused to allow artful pleading to circumvent the power of§ 301's preemptive force. Form is not to triumph over substance as employees relabel contract claims as claims for tortious breach of contract" or other tort actions arising from contract duties. Id. Under the "complete preemption corollary to the well-pleaded complaint rule, a purportedly state law claim, the resolution of which depends substantially upon an analysis of a collective-bargaining agreement's terms, must either be treated as a claim under § 301 or be dismissed as preempted under federal labor law." Id.

However, § 301 does not preempt "nonnegotiable rights conferred on individual employees as a matter of state law." Livadas v. Bradshaw, 512 U.S. 107, 123 (1994). Preemption only occurs when resolution of the state claim "is inextricably intertwined with consideration of the terms of the labor contract," Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213 (1985), or when application of state law to a dispute "requires the interpretation of a collective bargaining agreement," Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 413 (1988).

We thus examine whether resolution of Price's WVHRA claim is inextricably intertwined with or requires interpretation of the collective bargaining agreement with Goals. See McCormick v. AT&T, 934 F.2d 531, 535 (4th Cir. 1991). If "the state-law claim can be resolved without interpreting the agreement itself, the claim is `independent' of the agreement for § 301 pre-emption purposes." Id. (quoting Lingle, 486 U.S. at 409-10).

In this case, it is clear that resolution of Price's WVHRA claim does not require interpretation of the collective bargaining agreement and, instead, is an "independent" state law claim which is not preempted by the LMRA. See, e.g., Lingle, 48 U.S. 399 (§ 301 of the LMRA did not preempt Illinois tort action for retaliatory discharge arising out of an employee filing a workers' compensation claim, although employee could have brought a grievance under the collective bargaining agreement for termination without just cause for the same facts, because the state action did not require an interpretation of any term of the collective bargaining agreement); Jackson v. Kimel, 992 F.2d 1318 (4th Cir. 1993) (state tort claim of intentional infliction

11

of emotional distress was not preempted by § 301 of the LMRA because reference to the collective bargaining agreement was unnecessary to determine the duty of care owed); Martin Marietta Corp. v. Maryland Comm'n on Human Relations, 38 F.3d 1392 (4th Cir. 1994) (state law handicap discrimination and retaliation claims were not preempted by § 301 of the LMRA).

Goals does not seriously contend otherwise. Instead, Goals asserts that Price's state law claim "arises" under§ 301 solely because Price agreed to submit discrimination claims to arbitration under the collective bargaining agreement. In other words, Goals argues that the mere agreement to arbitrate converts Price's age discrimination claim into a § 301 claim. Goals further contends that, even if West Virginia refused to deprive WVHRA claimants of a court remedy where an arbitration agreement exists, the lawsuit would nevertheless be preempted by § 301 of the LMRA, which governs the enforceability of arbitration provisions contained in collective bargaining agreements.

In support of this argument, Goals again relies upon this court's opinion in Austin and, specifically, asserts that although the Austin opinion did not expressly invoke § 301 preemption, it implicitly did so in relying expressly on the federal labor law favoring resolution of labor disputes through arbitration. We find no such support in Austin. Austin did not involve the issue of whether the LMRA preempted a state human rights act claim. On the contrary, it dealt exclusively with the federal policy favoring arbitration and a conclusion that Congress, in enacting certain federal statutory discrimination provisions, did not intend to preclude the enforcement of mandatory arbitration provisions in a collective bargaining agreement. Price's action, however, was brought solely for violation of the WVHRA. It does not include an action for violation of a federal statutory right or for violation of a right or obligation created by the collective bargaining agreement.

On its face, Price's complaint does not raise a federal question. Furthermore, this is not a situation where the LMRA operates as a "complete preemption" exception to the "well-pleaded complaint" rule. Goals is not asserting that the age discrimination provisions of the collective bargaining agreement supersede state statutory claims for age discrimination, nor is Goals seeking to enforce the arbitration provision in the collective bargaining agreement by asserting a coun-

12

terclaim or motion to compel arbitration pursuant to§ 301 of the LMRA. Rather, Goals is asserting the mandatory arbitration provision as a defense to Price's WVHRA claim.

The "complete preemption exception" to the"well-pleaded complaint" rule does not apply when the employer merely raises the collective bargaining agreement as a defense to the state law claim.

> It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule -- that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.

Caterpillar, 482 U.S. at 398-99. Thus, under Caterpillar, a defense available as a result of a collective bargaining agreement cannot overcome the well-pleaded complaint rule where the state law claim itself is not preempted by § 301 of the LMRA.

Accordingly, this court holds that the arbitration provision in the collective bargaining agreement does not independently operate to preempt Price's WVHRA claim or to confer federal question jurisdiction upon the district court. While Goals is free to assert the arbitration provision as a defense to the state claim, it must do so before the West Virginia state court. Remand to the West Virginia state court will also afford that court an opportunity to decide the issue of whether the arbitration clause contained in the collective bargaining agreement precludes Price's WVHRA age discrimination claim in accordance with its own laws and legislative intent.

III.

The order of the district court is accordingly vacated and the case is remanded to the district court with instructions to grant plaintiff's

13

motion to remand this case to the Circuit Court of Raleigh County, West Virginia.

VACATED AND REMANDED

14