900 F.2d 256
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Garst V. TRITLE, Plaintiff-Appellant,
v.
CROWN AIRWAYS, INC., A SUBSIDIARY OF OWENS-ILLINOIS, INC.;
Brockway, Inc. (NY); Owens-Illinois, Inc.; Crown Airways,
Inc., as successor corporation of Brockway, Inc., a wholly
owned subsidiary of O-I-B Crown Airways, Inc.; O-I-B Crown
Airways, Inc., a wholly owned subsidiary of Owens-Illinois,
Inc., Defendants-Appellees.
 No. 89-2161.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 9, 1990.
Decided: April 4, 1990.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Parkersburg. Charles H. Haden, II, Chief District Judge. (CA-88-878-A)
 William Glenn Mercer, Parkersburg, W.Va., for appellant.
 Robert J. Schiavoni, Steptoe & Johnson, Clarksburg, W.Va. (Argued), for appellees; Robert M. Steptoe, Jr., Steptoe & Johnson, Clarksburg, W.Va., on brief.
 S.D.W.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, WILKINS, Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Garst V. Tritle ("Tritle") brought this wrongful discharge action against his former employer, Crown Airways, Inc., Crown's parent corporation, Brockway, Inc., and Brockway's successors in interest, O-I-B Crown Airways, Inc. and Owens-Illinois, Inc. (hereinafter collectively referred to as "Crown"), alleging that he was terminated unlawfully for reporting to Crown's management certain perceived air safety violations committed by its chief pilot. The district court granted Crown's motion for summary judgment, holding that there was no cause of action under West Virginia law protecting Tritle against retaliatory discharge, and that his employment contract was not breached by Crown. Tritle now appeals that decision, arguing that: (1) West Virginia courts, if confronted by the question, would recognize a cause of action for retaliatory discharge applicable to employees working in the aeronautics industry; (2) such a cause of action is not preempted by federal law; and (3) Crown did breach his employment contract. For the reasons discussed below, we affirm the decision of the district court.
 
 I.
 
 2
 Crown is a regional airline which operates two types of aircraft, one of which is manufactured by Shorts Brothers ("Shorts"). Tritle worked for Crown from October 5, 1981 until May 20, 1988. For more than five of those years, Tritle was Crown's Maintenance Supervisor for Shorts aircraft.
 
 
 3
 On October 5, 1986, William Paulson ("Paulson") and his co-pilot, David Petrun ("Petrun"), were scheduled to fly a Shorts commuter aircraft from Youngstown, Ohio to Parkersburg, West Virginia with an intermediate stop in Pittsburgh, Pennsylvania. Prior to the flight's departure from Youngstown, Paulson ordered a maintenance crew to start the aircraft's engines from an external battery cart rather than from the plane's own batteries. Paulson made this decision because the electrical charge in one of the plane's batteries was unusually low, showing a charge of 17 volts rather than the normal 22 volts. Petrun questioned the safety of starting the aircraft's engines externally in light of the weakened battery. Petrun's concern was echoed by Tritle, who was informed of Paulson's order by a mechanic servicing the Shorts airplane.
 
 
 4
 Apparently, the FAA-approved Shorts crew manual, which is followed by Crown's ground personnel, warns against external engine starts if any of a plane's batteries register less than 22 volts. Instead, the standard procedure requires the ground crew to replace the faulty batteries and start the aircraft's engines from properly charged internal batteries.
 
 
 5
 On October 15, 1986, at Petrun's request, Tritle prepared a brief memorandum describing the events surrounding the external engine start ordered by Paulson. In relevant part, the memorandum stated:
 
 
 6
 The dangerous condition involves not so much the start of the engines with external power but the return to internal power after engine start. The continuance of any flight after external start with the battery at such a low voltage may cause the battery to reverse polarity, and with an increased high charge rate, can cause the nicad battery to over heat and consequently lose that battery.
 
 
 7
 It is my professional opinion as Supervisor of Shorts Maintenance that this flight should never have left the ground and the continuance of that flight unnecessarily jeopardized the safety of the passengers and crew.
 
 
 8
 Petrun attached Tritle's memo to the end of a two-page letter which he sent to Crown's management detailing the incident of October 5, 1986. In his letter, Petrun concluded: "I can offer you 5 more working days to investigate this matter and take the appropriate actions. If nothing is done, I may be compelled to send a copy of this letter to the FAA in Washington, D.C." Tritle claims that he was demoted and effectively discharged by Crown for questioning Paulson's order and reporting his concern over the perceived air safety violations. More specifically, Tritle contends that he was fired by Crown in retaliation for the strident opinions which he expressed in his memorandum to Petrun, a copy of which Petrun threatened to disclose to federal aviation regulatory authorities.
 
 
 9
 Consequently, on May 25, 1988, Tritle filed this action in the Circuit Court of Wood County, West Virginia. Thereafter, Crown removed this suit to the United States District Court for the Southern District of West Virginia pursuant to 28 U.S.C. Sec. 1441(a). On August 16, 1989, the district court granted Crown's motion for summary judgment, holding that "there is no right of action premised in West Virginia public policy protecting the Plaintiff from discharge for notifying management of airline safety complaints. The Court further rejects Plaintiff's argument that the adverse employment action of the Defendants constitutes a breach of employment contract." This appeal followed.
 
 II.
 
 10
 Summary judgments are appropriate in those cases where there is no genuine dispute as to a material fact and it appears that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). In other words, summary judgments should be granted in cases "where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir.1950); see also Charbonnages De France v. Smith, 597 F.2d 406, 414 (4th Cir.1979). Moreover, a moving party is entitled to summary judgment if the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which the non-moving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such cases, there can be no genuine issue as to a material fact since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Id. at 322-23. Most importantly, summary judgments are reviewed de novo on appeal. Higgins v. E.I. DuPont De Nemours & Co., 863 F.2d 1162, 1166-67 (4th Cir.1988).
 
 III.
 
 11
 As an initial matter, we question whether Tritle could bring a retaliatory discharge claim under state law even if this court concludes that such an action is supported by a substantial public policy interest of West Virginia and is not preempted by federal law. First, Crown did not fire Tritle. Rather, Tritle was demoted from a supervisory position to senior mechanic following the incidents at issue in this case. Tritle claims that he was physically incapable of performing all the duties of the new job (which included some lifting and carrying of heavy equipment), that Crown knew of his physical limitations (primarily back problems), and that Crown's actions constituted an effective discharge. It should be noted that Tritle originally took disability leave, and then never returned to work because of his physical impairments. The first problem, therefore, is that Tritle was not actually discharged by Crown.
 
 
 12
 The second infirmity in this case is that neither Tritle nor Petrun, so far as the record indicates, actually reported any alleged air safety violations to the FAA or any other regulatory entity, either federal or state. Thus, no whistle-blowing occurred in this case. Rather, Petrun merely threatened to contact the FAA. Consequently, while some of Crown's actions may fit the "classic" retaliatory discharge scenario, Petrun's and Tritle's actions do not. Cf. Adler v. American Standard Corp., 830 F.2d 1303, 1307 (4th Cir.1987) (In construing Maryland law, this court held that a "discharge resulting from his [an employee's] intention to 'blow the whistle' on illegal activities condoned by his supervisors" did not constitute a violation of the state's public policy.). In summary, the facts of this case only tangentially support a determination that Tritle was discharged in retaliation for reporting a perceived air safety violation to governmental authorities. In reaching our decision in this case, however, we do not rely on these seemingly fatal flaws in Tritle's case.
 
 IV.
 
 13
 Under West Virginia law, a discharged employee may bring an action sounding in tort against his employer if the termination contravenes some substantial public policy principle. Harless v. First National Bank in Fairmont, 162 W.Va. 116, 246 S.E.2d 270, 275 (1978), cited in Washington v. Union Carbide Corp., 870 F.2d 957, 962 (4th Cir.1989). In Washington, this court expounded on the scope of this cause of action:
 
 
 14
 ... West Virginia courts have proceeded with "great caution" in applying public policy to wrongful discharge actions. The power to declare an employer's conduct as contrary to public policy is to be exercised with restraint, and with due deference to the West Virginia legislature as the primary organ of public policy in the state.
 
 
 15
 Prior cases in this area underscore the need for retaliatory discharge actions to rest upon a statutory articulation of public policy by the West Virginia legislature.... There is no instance in which the West Virginia Supreme Court of Appeals has recognized a retaliatory discharge action of any sort in the absence of legislative recognition that such discharge contravenes the public policy of the state.
 
 
 16
 870 F.2d at 962-63 (citations omitted). The narrow issue before this court, therefore, is whether Tritle's retaliatory discharge claim is premised on some public policy principle which is rooted in a legislative enactment of West Virginia.
 
 
 17
 In this case, Tritle argues that his unlawful discharge claim is supported by a public policy interest articulated by the West Virginia legislature, and he cites the following statutory provision:
 
 
 18
 No person shall operate an aircraft in the air over, or on the ground or water within this state in a careless and reckless manner in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection and in a manner so as to endanger or be likely to endanger any person or property.
 
 
 19
 W.Va.Code Sec. 29-2A-12 (1986). This court also takes judicial notice of a related provision, which reads in relevant part:
 
 
 20
 It shall be the duty of the commission, its members, the director, officers and such employees of the commission as may be designated by it, and every state and municipal officer charged with the enforcement of this article and of all rules, regulations and orders issued pursuant thereto and of all other laws of this state relating to aeronautics; and in that connection each of the aforesaid persons is authorized to inspect and examine at reasonable hours any aircraft, the credentials of any airman or other person engaged in aeronautics required by the laws of this state or of the United States to have in his possession credentials evidencing his authority or permission to engage in aeronautics, any premises, and the buildings and other structures thereon, where airports, air navigation facilities, air schools, or other aeronautical activities are operated or conducted.
 
 
 21
 W.Va.Code Sec. 29-2A-20 (1986). The West Virginia courts have not yet addressed the question whether either or both of these statutes support a Harless right of action.
 
 
 22
 This case illustrates one of the tremendous drawbacks of federal diversity jurisdiction. In our view, the question which is before this court is perhaps best answered by the courts of West Virginia. There can be no doubt that the jurists of that state are better situated to decide whether to extend the Harless cause of action for retaliatory discharge to employees such as Tritle.
 
 
 23
 More importantly, we believe that our earlier decision in Washington constrains us from recognizing such a new cause of action. In Washington, we noted:
 
 
 24
 A state claim which has not been recognized by state courts may well be a settled question of state law. [However, f]ederal courts are permitted under Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), and United Mine Workers v. Gibbs, 383 U.S. 715 (1966), to rule upon state law as it presently exists and not to surmise or suggest its expansion.
 
 
 25
 870 F.2d at 962 (citations edited) (emphasis added). Today, we reaffirm our decision in Washington, and hold that a state claim which has not been recognized by that jurisdiction's own courts constitutes a settled question of law, which will not be disturbed by this court absent the most compelling of circumstances. For as this court concluded in Washington, we generally do not have the authority "to surmise or suggest its expansion." We dismiss as specious Tritle's claim that such a ruling will largely preclude the West Virginia courts from ever reaching this question because of the removal jurisdiction of the federal courts. We are fully aware of the ingenuity of attorneys in selecting and retaining the fora of their choosing, and of the ability of state courts to reach and decide issues of great moment and concern to their respective jurisdictions.
 
 
 26
 In Washington, this court held that a district court has the discretion to address a state claim on the merits without first resolving the question whether the state claim was preempted by federal law. 870 F.2d at 958, 960. This is what happened below, where the district court essentially disposed of the case on Rule 12(b)(6) grounds, and failed to reach the question of preemption. Since we do not recognize an expanded Harless claim, we need not address the preemption question.
 
 V.
 
 27
 At-will employment is presumed under West Virginia law. Wright v. Standard Ultramarine & Color Co., 141 W.Va. 368, 90 S.E.2d 459, 467 (1955); Cook v. Heck's Inc., 342 S.E.2d 453, 457 (W.Va.1986). However, at-will employment may be contractually modified through employee handbooks or personnel manuals, provided that the traditional elements of contract formation are met (such as offer, acceptance and consideration). Cook, 342 S.E.2d at 457-58 (W.Va.1986). Under Cook, a handbook or manual will constitute a unilateral contract of employment only if: (1) it is distributed by an employer to the employees; and (2) it contains a definite promise by the employer not to dismiss employees except for certain specified reasons. Id. at 459. These two conditions do not exist in this case.
 
 
 28
 Tritle suggests that a two-page document distributed by Crown's General Manager, entitled "Management Instruction Number 8" and addressing the topic of "Disciplinary Policy," constitutes an employee handbook or policy manual of the type described in Cook. However, there is no evidence in the record, and Tritle cites none, to indicate that the document was ever provided to Crown employees (it appears to have been sent to Crown's management exclusively). In addition, the document sets forth only the procedures to be followed in disciplining employees, and does not specify with any significant amount of certainty what types of activities are subject to discipline, other than to indicate that "excessive tardiness, absenteeism and violation of work rules or other Company policies and procedures" may give rise to disciplinary action. Even if this document were construed to be a contractual offer of employment, it contains the following clause:
 
 
 29
 IMPORTANT NOTE: In the event that an improper action is performed or a Company work rule, policy or procedure is violated by an employee, which the Company judges to be serious, any previous step may be excluded in the disciplinary process and the employee may be terminated without concern for the [procedures outlined in this document].
 
 
 30
 This provision, on its face, appears to authorize almost any adverse employment action by Crown management. Finally, it should be recalled that Crown simply demoted Tritle and did not terminate his employment directly. Thus, Tritle's at-will claim could be valid only if this court accepts his constructive discharge theory, which we do not.
 
 VI.
 
 31
 Based on the foregoing reasons, we conclude that the district court did not err in granting Crown's motion for summary judgment. Accordingly, the decision below is hereby
 
 
 32
 AFFIRMED.