**C. Cameron BELL, Plaintiff,**

v.

**ASHLAND PETROLEUM COMPANY, INC., Defendant.**

Civ. A. No. 3:92–0311.

United States District Court,
S.D. West Virginia,
Huntington Division.

Jan. 29, 1993.

John A. Kessler, Hunt & Wilson, Ted M. Kanner, The Ted Kanner Law Office, Charleston, WV, for plaintiff.

Joseph M. Price, Michael B. Victorson, Robinson & McElwee, Charleston, WV, for defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendant's motion for summary judgment pursuant to *Rule* 56(c). The Court concludes that genuine issues of material fact remain. Accordingly, Defendant's motion is hereby DENIED in part. The Court GRANTS Defendant's *motion relating to Plaintiff's First Amendment claim.* Primarily, this opinion will address whether Plaintiff's claim of retaliatory discharge is cognizable under Kentucky law.

A brief summary of the disputed facts follows. Plaintiff began working for the Defendant at its Catlettsburg Refinery ("Refinery") in March or April of 1990. The Environmental Protection Agency ("EPA") and the Kentucky Department of Air Quality ("KDAQ") inspected the Refinery from January 22 to February 7, 1991. Prior to the inspection, Plaintiff's supervisor told him not to "volunteer anything." Plaintiff interpreted this remark as a direction to conceal a certain violation. The supervisor contends the instruction was to

prevent Plaintiff from volunteering incorrect data.

■ Plaintiff asserts that a KDAQ inspector asked him about the Btu levels of two different heaters at the Refinery. Plaintiff responded that the heaters were operating in excess of their Btu duty rating. Plaintiff asserts his supervisor told him afterward he should not have relayed this information. On April 29, 1991, Defendant received a Notice of Violation from the EPA. One violation involved the duty rating information which Plaintiff gave the inspectors.[1]

Plaintiff contends he was discharged on March 15, 1991, as a result of his statements to the inspectors. Defendant asserts that the individuals who discharged Plaintiff were unaware of his statements to the inspectors.[2] Plaintiff contends he was discharged for his refusal to violate a law in the course of his employment.[3]

■ Kentucky adheres to the terminable-at-will doctrine. *Firestone Textile Co. v. Meadows,* 666 S.W.2d 730, 732 (Ky. 1983).[4] An at-will employee may be discharged for good cause, no cause, or a "morally indefensible" cause. *Id.* at 731. Kentucky, however, has adopted a public-policy exception to its terminable-at-will doctrine. *Grzyb v. Evans,* 700 S.W.2d 399

---

**1.** Defendant contends it self-reported this and other information to authorities *prior* to the inspection. An affidavit submitted by Defendant supports this position. The EPA's Notice of Violation, however, states the basis of the duty rating violation was "the EPA inspection conducted on January 22–25 & 28–31, 1991 at the PRC [Petroleum Refinery Complex] *and* information submitted by Respondent to the KDAQ" (emphasis added). The letter accompanying the Notice also states that the inspection and self-reported material formed the basis for the violations. *On this record, the Court is* unable to conclude that Plaintiff's information was immaterial to the EPA's decision.

**2.** The Defendant asserts the decision to terminate Plaintiff rested on serious, alternative grounds. Defendant asserts, *inter alia,* that Plaintiff (1) was actively stalking a female co-employee and (2) leaked sensitive bidding information on a project to be performed at the Refinery. The true reason for Plaintiff's termination is one which the Court will submit to the trier of fact.

**3.** Plaintiff also claims his discharge "was in retaliation for [his] attempts to exercise his constitutional rights of free speech." Pl.'s Compl. at 2. Defendant seeks summary judgment on this count based on *United Bhd. of Carpenters v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) and *Grzyb v. Evans,* 700 S.W.2d 399 (Ky.1985). These cases suggest that absent state action an individual's First Amendment rights are not implicated. *Scott,* 463 U.S. at 832, 103 S.Ct. at 3358 (stating "a conspiracy to violate First Amendment rights is not made out without proof of state involvement"); *Grzyb,* 700 S.W.2d at 402 (holding "the First Amendment guarantee of freedom of association only proscribes governmental transgressions"). The Court concludes that Defendant is entitled to summary judgment on this count.

**4.** Plaintiff's employment and termination occurred in the State of Kentucky. The parties agree that Kentucky substantive law controls this dispute. *See, e.g., Burwell v. Virginia ACME Markets, Inc.,* 355 F.Supp. 784 (S.D.W.Va.1973).

(Ky.1985); *Firestone,* 666 S.W.2d at 731–32. Absent an explicit legislative statement prohibiting the discharge, only two situations exist where an employee may maintain a cause of action for retaliatory discharge. *Grzyb v. Evans,* 700 S.W.2d at 402. One of these situations involves the discharge of an employee for his refusal to violate a law in the course of employment. *Id.*

▪ A federal criminal statute states that:

> Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 1001 (1988).

Neither party has directed the Court's attention to cases addressing § 1001's interaction with the public-policy exception. Several courts, however, have permitted § 1001 to be used as a basis for a retaliatory discharge claim. *Martin Marietta*

*Corp. v. Lorenz,* 823 P.2d 100, 110–12 (Colo.1992); *Johnson v. World Color Press, Inc.,* 147 Ill.App.3d 746, 101 Ill.Dec. 251, 253–54, 498 N.E.2d 575, 577–78 (1986); *Petersimes v. Crane Co.,* 835 S.W.2d 514, 517 (Mo.Ct.App.1992).

Plaintiff's supervisor instructed him not to volunteer anything to the KDAQ and EPA inspectors. Plaintiff believes his supervisor's instruction was meant to conceal or cover up violations at the Refinery. Further, the supervisor allegedly chastised Plaintiff for the statements he made during the inspection.

Under § 1001, anyone who "knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact" is subject to prosecution. Had Plaintiff concealed or made false statements regarding the violations he pointed out to the EPA and KDAQ inspectors, he would have been subject to prosecution under § 1001.[5] Treating Plaintiff's evidence as true, and his inferences as correct,[6] the Court concludes that a sufficient link exists between Plaintiff's refusal to conceal the violations and his subsequent termination by Defendant.[7] Further, the Court concludes that Plaintiff's failure or refusal to violate § 1001 falls within an existing cause of action under Kentucky law.[8]

---

5. Defendant does not contest the EPA's jurisdiction over the inspection of the Refinery. Therefore, the Court need not address this issue.

6. *Anderson v. Liberty Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

7. Defendant asserts § 1001 is inapplicable for two reasons. First, Defendant claims that Bell was never "asked to make, and refused to make, false statements." Def.'s Reply Br. at 6. However, the statute proscribes *concealment* as well as false statements. Further, taking Plaintiff's inferences as correct, he might reasonably have concluded his supervisor's comments encompassed the making of false statements to mislead the investigators.

Second, Defendant claims that Plaintiff "did not make any pertinent statements to a representative of a federal governmental agency." However, a § 1001 offense may arise even if the proscribed activity was not directly perpetrated on the federal department or agency. *See, e.g., United States v. Stanford,* 589 F.2d 285, 297–98 (7th Cir.1978) (holding § 1001 applicable to false statements made on forms submitted to

state government: "The term 'jurisdiction' merely incorporates Congress' intent that the statute apply whenever false statements would result in the perversion of the authorized functions of a federal department or agency"); *United States v. St. Michael's Credit Union,* 880 F.2d 579 (1st Cir.1989) (stating "In this circuit, as in virtually all others, it has been held that a concealment or misrepresentation need not be made directly to a federal agency or department to sustain a § 1001 conviction") (citations omitted). The jurisdiction of the federal department or agency is the relevant inquiry, and the Defendant has not challenged the EPA's jurisdiction over the Refinery. Further, while a KDAQ official posed the question regarding the heaters, EPA officials were present at the time.

8. This conclusion does not contravene the federal policy of "rul[ing] upon state law as it presently exists [rather than] surmis[ing] or suggest[ing] its expansion." *Tritle v. Crown Airways, Inc.,* 928 F.2d 81, 83–84 (4th Cir.1990); *Washington v. Union Carbide Corp.,* 870 F.2d 957, 962 (4th Cir.1989). The Supreme Court of

Accordingly, the Court denies the Defendant's motion for summary judgment with exception to Plaintiff's First Amendment claim and ORDERS that this case proceed to trial to resolve the remaining issues of fact.

Kentucky has already established a cause of action for discharged employees who fail or refuse to violate a law in the course of employment.

Furthermore, *Crown Airways* and *Union Carbide* are distinguishable from the instant case in many respects. For instance, both cases presented issues of whether certain state statutes constituted the "substantial public policy" of West Virginia. *Crown Airways*, 928 F.2d at 84; *Union Carbide*, 870 F.2d at 963. The Court need not engage in such a nebulous inquiry here. It need only determine if Plaintiff could have been prosecuted under an unambiguous federal law.

Defendant apparently acknowledges the difference. While it mentioned *Crown Airways* and *Union Carbide* in its initial motion, it abandoned the argument in its reply brief.