**Robert H. TAYLOR, Plaintiff,**

v.

**CUMMINS ATLANTIC, INC., Defendant.**

**Civ. A. No. 3:92–1850–19BD.**

United States District Court,
D. South Carolina,
Columbia Division.

March 1, 1994.

Paul H. Infinger, Beaufort, and Herbert W. Louthian, Louthian and Louthian, Columbia, for plaintiff.

George Daniel Ellzey, Columbia, and Mason Gardner Alexander, Jr., Ogletree, Deakins, Nash, Smoak & Stewart, Columbia, for defendant.

### ORDER

SHEDD, District Judge.

Defendant discharged plaintiff from employment for the stated reason of poor work performance. As a result, plaintiff filed this lawsuit alleging causes of action for breach of contract, nonpayment of wages in violation of the South Carolina Wage Payment Act (S.C.Code Ann. §§ 41–10–10 to –110), age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. §§ 621–34) and the South Carolina Human Affairs Law ("SCHAL") (S.C.Code Ann. §§ 1–13–10 to –110), fraud, and intentional infliction of emotional distress. This matter is now before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. After carefully reviewing the

record and the controlling legal principles, the Court concludes that the motion should be granted for the reasons set forth below.

## I

Summary judgment is not "a disfavored procedural shortcut, but rather [it is] an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting *Fed.R.Civ.P.* 1). Summary judgment "provides a procedure with which to bypass a trial when the fact resolution process of trial would prove to be of no use in the disposition of the case." *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1315 (4th Cir.1993). When the moving party properly supports its motion showing that it is entitled to judgment as a matter of law, the party opposing the motion must present "affirmative evidence" to establish a genuine dispute of material fact which is necessary to defeat the summary judgment motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257–58, 106 S.Ct. 2505, 2514–15, 91 L.Ed.2d 202 (1986). In reviewing a motion for summary judgment, the Court is required to view any permissible inferences to be drawn from the underlying facts in the light most favorable to the non-moving party. *Moore v. Winebrenner*, 927 F.2d 1312, 1313 (4th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991). If, after viewing the evidence in the light most favorable to the non-moving party, the Court finds that the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial, the Court must grant summary judgment against that party. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 883–84, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990). "In short, the summary judgment procedure allows the court to forecast the proof at trial to determine whether consequential facts are in dispute, and if not, to resolve the case without a trial." *Mitchell,* 12 F.3d at 1316.

## II

■ Initially, the Court will consider plaintiff's claim for nonpayment of wages under the South Carolina Wage Payment Act, which requires an employer to pay all wages due to a separated employee within forty-eight hours of the time of separation or the next regular payday (not to exceed thirty days), S.C.Code Ann. § 41–10–50; and which creates a civil action for violation of the Act. *See* S.C.Code Ann. § 41–10–80(C). In support of its motion on this claim, defendant has submitted an affidavit of its company Controller, Terry Fisher, in which Mr. Fisher states that defendant has fully paid plaintiff all commissions to which he was entitled. During discovery, plaintiff failed to identify which commissions had not been paid and, in his opposition to the motion, plaintiff has failed to come forward with any evidence regarding this claim.[1] Based on the record which has been presented, the Court concludes that defendant is entitled to summary judgment on this claim.

## III

■ The Court next turns to plaintiff's intentional infliction of emotional distress claim, which defendant argues, *inter alia,* is precluded by the South Carolina Workers' Compensation Act. Defendant cites *Dickert v. Metropolitan Life Insurance Company,* 428 S.E.2d 700 (S.C.1993), in which the South Carolina Supreme Court reaffirmed the principle that "an employee's action against a company for intentional infliction of emotional distress ... [is] within the scope of the [Workers' Compensation] Act since [it] arise[s] from personal injury." *Id.* at 701. The *Dickert* court noted that "[i]t is only when the tortfeasor/co-employee is the 'alter

1. Plaintiff contends that defendant has not provided him with sufficient information to determine what commissions have not been paid and until he receives "the proper documents which are in the exclusive control of [d]efendant ..., he cannot make the calculations necessary to provide the Court for a determination on this issue." *Plaintiff's Memo. In Opp. Of Def.'s Mot.,* at 46. This case was filed in May 1992 and discovery closed on March 22, 1993. Plaintiff has had ample opportunity to discover evidence in support of this claim, yet he has completely failed to do so.

ego' of the employer that liability falls outside the scope of the Act." *Id.* With these principles in mind, the *Dickert* court "decline[d] to extend the definition of alter ego to supervisory employees such as office manager and [held] that only 'dominant corporate owners and officers' may constitute alter egos." *Id.*

In light of *Dickert,* the Court concludes that plaintiff's claim for outrage must fail. Plaintiff has made no showing that the alleged outrageous conduct was committed by a "dominant corporate owner" of defendant. Indeed, plaintiff has not responded to this particular argument in its memoranda in opposition to the motion but, instead, has merely argued that defendant's actions are outrageous. Because plaintiff has failed to set forth facts to remove this case from the holding of *Dickert,* defendant is entitled to summary judgment on this claim.

### IV

■■■ The Court will next consider plaintiff's claim of age discrimination under the ADEA and the SCHAL,[2] which do not require an employer "to adopt a life of economic altruism and thereby immunize protected class members from discharge or demotion despite their poor performance," *Gairola v. Virginia Dep't of Gen. Servs.,* 753 F.2d 1281, 1287 (4th Cir.1985); but, instead, preclude an employer from treating employees less favorably because of age. *Id.* In order to establish a claim under these statutes, "a plaintiff must prove, with reasonable probability, that but for the age of the plaintiff, the adverse employment decision would not have been made. Age must have been a determining factor in the employment decision." *Mitchell,* 12 F.3d at 1314. A plaintiff may prove that age was a determining factor in the

adverse employment decision under ordinary standards of proof or under a proof scheme judicially created for use in Title VII cases and subsequently adapted for use in ADEA cases. *E.E.O.C. v. Clay Printing Co.,* 955 F.2d 936, 940 (4th Cir.1992).[3]

### A.

■■■ In applying ordinary standards of proof, plaintiff must establish the following elements in order to prevail: (1) he is age 40 or older, (2) he was discharged, and (3) the circumstances surrounding his discharge indicate that his age was a determining factor in the sense that but for defendant's motive to discriminate against him because of his age, he would not have been discharged. *Clay Printing Co.,* 955 F.2d at 940–41. Under this scheme of proof, plaintiff may prove his case by introducing direct evidence of discrimination, which typically consists of statements made by the employer which specifically link the discharge to her age, *see Moore v. City of Charlotte,* 754 F.2d 1100, 1105 (4th Cir.), *cert. denied,* 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985); or by introducing indirect evidence of discrimination, which typically includes, but is not limited to, " 'proof of [his] general qualifications, from which the inference of age discrimination may rationally be drawn independently of any age presumption.' " *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 235 (4th Cir.1991) (citation omitted). To prevail on a claim of age discrimination based on indirect evidence requires proof that it is "more probable than not" that age discrimination is the reason for the discharge. *Id.*

■■■ Plaintiff argues that he has presented both direct and indirect evidence of age discrimination. Specifically, plaintiff

---

2. The ADEA makes it "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1). The SCHAL contains a similar prohibition. *See* S.C.Code Ann. § 1–13–80. Because there is little caselaw interpreting the SCHAL and because the SCHAL essentially follows the ADEA both procedurally and substantively in relevant respects, the Court will apply caselaw interpreting the ADEA to plaintiff's age discrimination claim under both statutes. *Cf. Orr v. Clyburn,* 277 S.C. 536, 290 S.E.2d 804, 806 (1982) (holding that Title VII

cases "are certainly persuasive if not controlling in construing the [SCHAL]").

3. The Supreme Court created the Title VII analysis in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); and *Texas Dept. of Commun. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); and recently clarified it in *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

points to affidavits from several former employees who claim that defendant discriminatorily terminated them. The Court has reviewed these affidavits and find that they contain nothing more than conclusory allegations that defendant terminated them because of their age, among other reasons. Therefore, these affidavits are not probative of plaintiff's claim of age discrimination.[4] In addition, plaintiff points to a change in defendant's commission schedule as being proof that defendant terminated him because of his age. However, plaintiff's wholly speculative theory concerning this commission change simply does not support his claim of age discrimination either factually or legally. In short, to the extent that plaintiff attempts to prove his case using ordinary standards of proof, the Court concludes that his claim of age discrimination must fail as a matter of law.

### B.

■■■ Plaintiff also argues that he can prove his claim of age discrimination under the Title VII scheme of proof, which first requires him to establish a *prima facie* case of age discrimination by showing that (1) he is age 40 or older, (2) he was discharged, (3) at the time of the discharge he was performing his job at a level that met defendant's legitimate expectations, and (4) following his discharge, he was replaced by someone of comparable qualifications under the age of forty. *Mitchell,* 12 F.3d at 1315. The Court concludes that plaintiff has failed to establish a *prima facie* case because the evidence presented by defendant, and not refuted by plaintiff, is that following his termination, plaintiff was replaced by two employees, both of whom are over the age of forty and, consequently, are within the protected class. As noted, the fourth prong of a *prima facie* case under the Title VII scheme of proof requires proof that the employer replaced

the employee with persons outside of the protected class. Therefore, because plaintiff has failed to make a *prima facie* showing of discrimination, the Title VII proof scheme inquiry ends, and defendant is entitled to summary judgment on this claim. *Gairola,* 753 F.2d at 1288.

### V

■■■ The Court now will consider plaintiff's breach of contract claim. Plaintiff alleges that the pertinent terms of his employment contract were created by defendant's Supervisors Manual ("the Manual") and Employee Handbook ("the Handbook"), a commission agreement between plaintiff and defendant, and alleged oral assurances defendant made concerning plaintiff's employment, and that defendant breached these terms by discharging him. Defendant argues in support of its motion that plaintiff was an at-will employee subject to discharge at any time for any reason and, therefore, he may not prevail on this cause of action. Plaintiff admitted in his deposition that he was employed for an indefinite period of time. Therefore, under South Carolina law, his employment contract is presumed to be for at-will employment. *Small v. Springs Indus., Inc.,* 300 S.C. 481, 388 S.E.2d 808, 809 (1990) ("*Springs II*"). When applicable, the doctrine of employment at will "allows an employer to discharge an employee without incurring liability for good reason, no reason, or bad reason." *Culler v. Blue Ridge Elec. Co-op., Inc.,* 422 S.E.2d 91, 92 (S.C.1992). Therefore, if the evidence in the record is uncontradicted that plaintiff's employment contract was for at-will employment, this cause of action must fail as a matter of law. *Epps v. Clarendon County,* 304 S.C. 424, 405 S.E.2d 386, 387 (1991).[5]

---

4. Moreover, even if these affidavits were probative of discrimination generally by defendant, they are not probative to the issue of whether defendant discriminated against plaintiff. *Cf. Terrell v. Feldstein Co.,* 468 F.2d 910, 911 (5th Cir.1972) (statistical evidence of discrimination against others "is not determinative of an employer's reason for the action taken against the individual grievant").

5. The right to terminate an at-will employee is not unlimited. *Ludwick v. This Minute of Carolina, Inc.,* 287 S.C. 219, 337 S.E.2d 213 (1985) (employer may not terminate at-will employee in violation of clear mandate of public policy). *Ludwick* is inapplicable here.

## A.

Plaintiff first contends that the Manual and the Handbook altered his at-will employment status. Plaintiff relies on the opinion in *Small v. Springs Industries, Inc.,* 292 S.C. 481, 357 S.E.2d 452, 455 (1987) (*"Springs I"*), in which the court held that "a jury can consider an employee handbook, along with other evidence, in deciding whether the employer and employee had a limiting agreement on the employee's at-will status." Plaintiff contends that both the Manual and the Handbook contain procedures concerning discipline which were binding and were applicable to him, and which defendant did not follow in discharging him. In its motion, defendant argues *inter alia* that plaintiff's claim must fail because defendant did not distribute either the Manual or Handbook to plaintiff. Plaintiff attempts to counter this argument by asserting that it was not necessary for defendant to have distributed the Manual or the Handbook to him in order for these documents to have altered his employment contract.[6]

▓▓▓▓▓ A contract is "an agreement on sufficient consideration, to do or not to do a particular thing." *Rabon v. State Finance Corp.,* 203 S.C. 183, 26 S.E.2d 501, 502 (1943). The employer-employee relationship " 'is necessarily contractual in character and to constitute one an employee it is essential that

there shall be a contract of service.' " *Holland v. Georgia Hardwood Lumber Co.,* 214 S.C. 195, 51 S.E.2d 744, 746 (1949) (citation omitted). Because a contract of employment is no different than any other type of contract, *Rickenbaker v. Layton,* 59 F.Supp. 156, 161 (D.S.C.1945); the Court must look to general principles of contract law in order to analyze plaintiff's claim of breach of an employment contract. This is true even though plaintiff relies upon *Springs I,* since the holding in *Springs I* is unquestionably based on principles of contract law, *Storms v. Goodyear Tire & Rubber Co.,* 775 F.Supp. 862, 866 (D.S.C.1991),[7] specifically unilateral contract principles:

> The employment agreement in this case, like most employment agreements, was a unilateral agreement. Springs made an offer or promise to hire Small in return for specified benefits and wages. Small accepted this offer by performing the act on which the promise was impliedly or expressly based. Springs' promise constituted the terms of the employment agreement. Small's action or forbearance in reliance on Springs' promise was sufficient consideration to make the promise legally binding. There was no contractual requirement that Small do anything more than perform the act on which the promise was predicated in order to legally bind Springs.

**6.** Many jurisdictions which allow *Springs I*-type actions require the employer to have distributed or otherwise intentionally published the handbook to the employee in order for the plaintiff to prevail. *See, e.g., Tritle v. Crown Airways, Inc.,* 928 F.2d 81, 85 (4th Cir.1990). The *Springs I* court implicitly acknowledged this principle. *See* 357 S.E.2d at 454-55 ("Unquestionably, Springs was under no duty to write and distribute the employee handbook;" "Once Springs voluntarily chose to publish the handbook;" "Having announced the policy"). Moreover, in the published South Carolina appellate opinions in which a plaintiff prevailed on a *Springs I* claim, the employer distributed or intentionally published the policy to the plaintiff. *See Springs I,* 357 S.E.2d at 453; *Leahy v. Starflo Corp.,* 431 S.E.2d 567, 568 (S.C.1993); *Hannah v. United Refrig. Servs., Inc.,* 430 S.E.2d 539, 540 (S.C.App. 1993); *Kumpf v. United Tel. Co. of the Carolinas, Inc.,* 429 S.E.2d 869, 870 (S.C.App.1993).

**7.** The *Springs I* court relied upon *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), in which the Michigan Supreme Court held that an employer can become contractually bound based on principles of promissory estoppel. However, the *Springs I* court did not adopt the *Toussaint* majority's analysis but, instead, adopted the unilateral contract theory urged by three concurring justices. *See* 357 S.E.2d at 454 (citing *Toussaint,* 292 N.W.2d at 900 (Ryan, J. concurring)). The Michigan Supreme Court has expressed doubt as to the validity of the *Toussaint* majority's holding. *See Rowe v. Montgomery Ward,* 437 Mich. 627, 473 N.W.2d 268, 269 (1991) ("the [*Toussaint*] theory remains troubling because of those instances in which application of contract law is a transparent invitation to the factfinder to decide not what the 'contract' was, but what 'fairness' requires").

357 S.E.2d at 454.[8]

 In order to prevail on his claim of breach of contract, plaintiff bears the burden of establishing the existence and terms of the contract, defendant's breach of one or more of the contractual terms, and damages resulting from the breach. *Fuller v. Eastern Fire & Cas. Ins. Co.*, 240 S.C. 75, 124 S.E.2d 602, 610 (1962). An action for damages for breach of contract is thus predicated on the existence of the contract. *Tidewater Supply Co. v. Industrial Electric Co.*, 253 S.C. 483, 171 S.E.2d 607, 608 (1969). The essential elements of a contract are an offer, an acceptance, and valuable consideration. *Carolina Amusement Co. v. Connecticut Nat'l Life Ins. Co.*, 437 S.E.2d 122, 125 (S.C.App.1993). "It is elemental ... that before a party can recover for the breach of a contract, he must allege and prove by competent, relevant testimony each one of the material elements of the contract sued on." *Rabon v. State Finance Corp.*, 203 S.C. 183, 26 S.E.2d 501, 502 (1943).

It necessarily follows that plaintiff cannot prevail on his breach of contract claim unless he can establish that defendant made an offer to him to alter the at-will nature of his employment. *See Masonic Temple, Inc. v. Ebert*, 199 S.C. 5, 18 S.E.2d 584, 587 (1942) (" '[t]here can be no contract unless there is ... an offer' " (citation omitted)). Under South Carolina law,

[I] An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.

[II] [A]n offer is judged by its objective manifestations, not by the mental reservations or subjective interpretations or intentions of the offeror.

[III] An offer need not be stated in words. Any conduct from which a reasonable person in the offeree's position would be justified in inferring a promise in return for a requested act or a requested promise by the offeree, amounts to an offer.

[IV] [An offer] to be binding, must be definite [and] must be one which is intended of itself to create legal relations on acceptance.

[I] *Carolina Amusement Co.*, 437 S.E.2d at 125; [II] *Noland Co. v. Graver Tank & Mfg. Co.*, 301 F.2d 43, 47 (4th Cir.1962); [III] *Broadway v. Jeffers*, 185 S.C. 523, 194 S.E. 642, 645 (1938); [IV] *McLaurin v. Hamer*, 165 S.C. 411, 164 S.E. 2, 5 (1932) (citations omitted).

 The Court finds from the evidence presented that plaintiff has failed to establish that defendant made an offer to alter his at-will employment status. The evidence is undisputed that defendant did not distribute or intentionally publish either the Manual or the Handbook to plaintiff.[9] Therefore, even as-

---

8. A unilateral contract is one "in which there is a promise on one side only; the consideration on the other side being executed." *McMahan v. McMahon*, 122 S.C. 336, 115 S.E. 293, 294 (1922).

9. Plaintiff relies upon *Miller v. Schmid Labs., Inc.*, 307 S.C. 140, 414 S.E.2d 126 (1992), for the proposition that it was not necessary for defendant to have distributed or published the Manual or the Handbook to him in order for these documents to alter his at-will status. In *Miller*, the court noted that "[i]t is certainly possible ... for a company to unintentionally bind itself through an employee handbook." 414 S.E.2d at 127. This is not a novel proposition; indeed, the employer in *Springs I* did not intend to alter the employment contract in that case. However, while an employer may unintentionally bind itself through an employee handbook, there must be evidence to establish that the employer has done so—that is, there must be evidence which establishes that the employer's conduct may be reasonably construed as an offer. That evidence is wholly lacking in this case, as evidenced by plaintiff's deposition testimony:

Q: During your employment with [defendant] ... were you ever issued any handbooks, manuals, policies, anything like that?

A: [by plaintiff] The books that I was given were insurance manuals, life insurance, that type of stuff. I don't know that there was an employee handbook, per se. There was some type of operation manual that the branch manager had, but we weren't encouraged to look at it.

Q: So it was a—you're talking about some sort of policy manual written for branch managers?

A: Well, I've never read it. I knew it was there; I was told it was there, but we really weren't encouraged to look at it. It was kept in the branch manager's office.

Q: So, other than its existence, you don't really know very much about it?

suming that the Manual or the Handbook could be read as altering an employee's at-will status,[10] plaintiff may not base his breach of contract claim on either of these documents because he has failed to make this basic showing on his contract claim.

### B.

Plaintiff also contends that his commission agreement with defendant altered his employment at-will status. In regard to this contention, plaintiff relies upon two documents: (1) a 1990 commission schedule (which is actually nothing more than a chart) and (2) a three-page memorandum dated May 6, 1977, from defendant to plaintiff which confirms the parties' sales agreement. Plaintiff's reliance upon these documents is clearly misplaced since neither document contains any language which can be read to alter plaintiff's at-will employment status. *Epps*, 405 S.E.2d at 386–87 ("We have reviewed the handbook and find no provision concerning procedures for termination or any provision which might otherwise be construed as altering an employee's at-will status"). Moreover, the 1977 agreement specifically states in the first paragraph on page one that the agreement "is not a contract and should not be viewed as such." *See Springs I*, 357 S.E.2d at 455 (noting employer's ability to utilize disclaimer to prevent its policies from altering the at-will relationship). For these reasons, plaintiff's breach of contract claim must fail to the extent that it is premised on the commission agreement.

### C.

■ Plaintiff also argues that defendant made certain oral assurances concerning his employment which altered his at-will status. Plaintiff testified as follows in his deposition concerning this matter:

Well, at every meeting we went to, they would give you goals; they wanted you to sell a million dollars worth of engines this year and it was understood that if I did, I

A: Other than just, you know, what rules you hear, and those kinds of things, and you can't put a lot of faith in rumors.

*Deposition of Robert H. Taylor*, at 27.

got my commission, and I'm concluding that that was an oral agreement; You do a million dollars or you do this, or you do that, and we're going to pay you your commission. If you don't, we're going to fire you. Now, that was—that's what I'm considering an oral agreement.

*Deposition of Robert H. Taylor*, at 85. In *Wadford v. Hartford Fire Insurance Company*, C.A. No. 3:87–2872–15 (D.S.C. Aug. 11, 1988), then District Judge (now Circuit Judge) Clyde Hamilton rejected a similar claim:

Plaintiff attempts to convert a statement informing her of one prerequisite of continued employment (*i.e.*, the production of a certain amount of bond business) into an overall assurance that, as long as she met that prerequisite, her relationship with Hartford could never change. This is a quantum leap which [the employer's] statements will not support. [The employer's] statements simply informed her that her job would be terminated if production was not forthcoming. There is nothing in the statements to indicate that the job could not be terminated for other reasons as well. In short, an affirmative statement of *one* job requirement cannot be realistically interpreted as an assurance that it is the *only* job requirement and that the company will forego its ability to reorganize or redirect its work force as long as the employee meets that single job requirement. Nor does the specification of a single job requirement limit the company's right to terminate ... the employee for other reasons in the future.

Pp. 15–16. The Court finds Judge Hamilton's analysis to be applicable here. Consequently, plaintiff may not base his breach of contract claim on the alleged oral assurances noted above.

### VI

■ Finally, the Court will consider plaintiff's fraud claim, which defendant ar-

10. Although it is not necessary for the disposition of this case, the Court finds that there is nothing in the Manual or the Handbook which can reasonably be read as altering plaintiff's at-will status.

gues must fail because plaintiff has failed to offer proof that it made any representations to plaintiff that are sufficient to constitute fraud. The first element which a plaintiff must prove in an action for fraud is that the defendant made a representation to him. *First State Sav. & Loan v. Phelps*, 299 S.C. 441, 385 S.E.2d 821 (1989). Plaintiff contends that defendant "represented that it had a handbook and manual that applied to employees that would be fairly and consistently applied and that each employee would know under what conditions and for what reasons they would be terminated." *Plaintiff's Memo. In Opp. Of Def.'s Mot.*, p. 51. Because plaintiff has failed to come forward with evidence to support this allegation, this claim must fail as a matter of law.

## VII

Based on the foregoing, the Court hereby **ORDERS** on this the 28th day of February, 1994, at Columbia, South Carolina, that defendant's motion for summary judgment be **GRANTED**.