48 F.3d 1217
 10 IER Cases 608
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert H. TAYLOR, Plaintiff-Appellant,
v.
CUMMINS ATLANTIC, INCORPORATED, Defendant-Appellee.
 No. 94-1596.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 30, 1995.
Decided March 6, 1995.
 
 ARGUED: Paul Hugh Infinger, DUKES, WILLIAMS, INFINGER & MEEKS, P.A., Beaufort, SC, for Appellant. Mason Gardner Alexander, Jr., OGLETREE, DEAKINS, NASH, SMOAK & STEWART, Columbia, SC, for Appellee. ON BRIEF: Herbert W. Louthian, LOUTHIAN & LOUTHIAN, Columbia, SC, for Appellant. E. Daniel Ellzey, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, Columbia, SC, for Appellee.
 Before HALL and HAMILTON, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Robert Taylor (Taylor) sued Cummins Atlantic, Incorporated, (Cummins) for, inter alia,[1] breach of employment contract. The district court granted summary judgment in favor of Cummins pursuant to Fed.R.Civ.P. 56(c). See Taylor v. Cummins Atl., Inc., 852 F.Supp. 1279 (D.S.C.1994). Taylor appeals, asserting that Cummins altered his at-will employment status, thereby transforming him into a contractual employee and that Cummins breached his employment contract in discharging him. We affirm.
 
 I.
 
 2
 Taylor was employed by Cummins commencing in 1959, but was eventually discharged in 1991. Cummins' reason for terminating Taylor was poor work performance, specifically stating that customers had complained about Taylor and that he experienced problems with completing paperwork, returning telephone calls, modifying goods without approval, and missing work on alternating Fridays to the detriment of business. Contending that he was improperly discharged, Taylor posits that his at-will employment status was transformed into a contractual relationship based, inter alia,[2] on an employee handbook (handbook) and supervisor's manual (manual). The gravamen of his argument is that the handbook and manual contained a disciplinary procedure for discharging employees that Cummins failed to follow. Given that Cummins failed to comply with its own procedures in discharging him, Taylor asserts that Cummins breached his employment contract. Conversely, Cummins maintains that Taylor remained an at will employee, and thus he could be discharged at any time without cause. Additionally, Cummins asserts that it followed the disciplinary procedure in substance with respect to Taylor's discharge; thus, according to Cummins, even accepting Taylor's contention that the handbook and manual altered his at-will status, Taylor received the procedure to which he was entitled.
 
 II.
 
 3
 Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To prevail on a motion for summary judgment, Cummins must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that it is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of Taylor. See id. 257-58. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. Id. at 251-52. Taylor "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." See Beale v. Hardy, 769 F.2d 213, 214 (4th Cir.1985). To survive Cummins' motion, Taylor may not rest on his pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. See Celotex Corp., 477 U.S. at 324. As the Anderson Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 244. Our review over a grant of summary judgment is plenary. See Cooke v. Manufactured Homes, Inc., 998 F.2d 1256, 1260 (4th Cir.1993).
 
 A.
 
 4
 Taylor cites no specific language from either the handbook or the manual establishing that an employment contract was created, but simply relies on the allegation that provisions of the handbook and/or manual applied to him, thereby altering his at-will status. The disciplinary procedure on which Taylor relies provides:
 
 
 5
 Certain rules of general conduct and performance have been set up to assure the orderly and proper operation of our company. The list of violations that follow cannot cover all circumstances and it is not intended to be complete. It merely serves as a guideline, as we expect employees to exercise responsibility and good judgment in their personal actions. Violations such as these will result in disciplinary action which will be administered fairly and justly. It may take the form of a warning, time off without pay, or dismissal, depending upon the seriousness of the incident.
 
 
 6
 (J.A. at 130) (emphasis added). Then a recitation of illustrative violations is provided.
 
 Additionally, the manual provides:
 
 7
 The Company has developed the following disciplinary procedures to motivate rather than discourage its employees. Supervisors are encouraged to utilize this procedure; deviations must be approved by one of the Vice Presidents.
 
 
 8
 ....
 
 
 9
 Give a verbal warning as a problem develops with an employee. Document the warning and retain it in the Department/Branch for future reference. Forward this information to Personnel for review. Give a written warning ... if little or no improvement is shown within a reasonable period of time. Include previous discussion and/or warnings. Place the employee on a final warning status (usually 30 days). Emphasize to the employee that termination will be recommended if no noticeable improvement is shown during the final warning period. Have the employee read and acknowledge receipt of the warning.
 
 
 10
 (J.A. at 145) (emphasis added). Generally, under South Carolina law, "[t]he doctrine of employment at-will ... allows an employer to dis charge an employee without incurring liability for good reason, no reason, or bad reason." Culler v. Blue Ridge Elec. Coop., Inc., 422 S.E.2d 91, 92 (S.C.1992). The district court held "that there is nothing in the [m]anual or [h]andbook which can reasonably be read as altering [Taylor's] at-will status." Taylor, 852 F.Supp. at 1287 n. 10.
 
 
 11
 We agree with the district court. Even assuming, as we do, that the handbook and manual were disclosed to Taylor, we conclude that nothing in either publication reasonably can be read as altering Taylor's at-will employment status. While these policies articulate modes for discipline, their language is permissive, not compulsory. For example, the handbook states that violations "may take the form of a warning, time off without pay, or dismissal, depending on the seriousness of the incident." (emphasis added). Additionally, this language provides for a variety of consequences, rather than prescribing that a particular consequence must follow; moreover, these consequences "depend" on the gravity of the offense. This dependence means that there is flexibility in administration; the language does not provide that discipline must take any particular form. Likewise, while the manual provides that deviations must be approved, it also provides that supervisors "are encouraged to utilize this procedure." (emphasis added). The supervisors are, therefore, not compelled to utilize the procedure. Furthermore, implicit in the fact that deviations must be approved is the fact that deviations are permissible, and if permissible, then they are not mandatory. We conclude nothing in this language purports to alter Taylor's at-will status. Therefore, Taylor's employment status was terminable at will, and the district court properly granted summary judgment in favor of Cummins. See White v. Roche Biomedical Lab., Inc., 807 F.Supp. 1212, 1215 (D.S.C.1992), aff'd, 998 F.2d 1011 (4th Cir.1993) (per curiam ) (unpublished).
 
 
 12
 Apart from containing no language tending to alter Taylor's at-will employment status, we observe, although not necessary to our decision, that the manual contained an express disclaimer in the first paragraph of the first page reciting that "[t]he information in this manual addresses many but not all, of the aspects of employment with CUMMINS ATLANTIC INC. It is not a contract of employment and should not be interpreted as such." (J.A. at 137). South Carolina law gives affect to such disclaimers. See Small v. Springs, Indus., 357 S.E.2d 452, 455 (S.C.1987). The Supreme Court of South Carolina has noted that if nothing in the challenged instrument tends to alter the at-will status, then summary judgment is properly granted. See Epps v. Clarendon County, 405 S.E.2d 386, 386-87 (S.C.1991) (affirming a grant of summary judgment in favor of the employer and rejecting the plaintiff's contention that an employee handbook distributed to him altered his at-will status because "no provision [in the handbook] might otherwise be construed as altering an employee's at will status").
 
 B.
 
 13
 In addition to the disciplinary procedure, Taylor also asserts that because some provisions of the handbook and/or manual applied to him, this application transmuted his employment status from one of at-will to contractual. For instance, Taylor relies on the fact that the handbook and the manual provide that employees may drive company cars and are expected to drive safely; provide for equal employment and have a policy against discrimination based on race, color, religion, creed, age, sex, national origin, ancestry or handicap; articulate hiring procedures of job applicants and instruct supervisors on handling applicants and employees; prescribe safety rules and wearing safety equipment in the workplace, such as shoes and goggles and require that Taylor sign a "Safety and Work Rule Acknowledgment and Substance Abuse Policy" form stating that he would practice good safety habits and not engage in substance abuse; provide for holidays, vacations, tuition reimbursement for pertinent educational enrichment and require that the employee's supervisor sign the reimbursement form; and maintain a job description for territory managers that requires employees to follow policies and procedures as prescribed by Cummins management.
 
 
 14
 For the same reasons that the disciplinary procedure does not alter Taylor's at-will status, these other provisions do not convert Taylor into a contractual employee. There is simply nothing in the language of these provisions stating or implying that Taylor's at-will status was altered. For instance, with respect to the use of company cars, employees are merely instructed to operate them safely, obey traffic regulations, use company cars for company business, and keep records when using company cars. With respect to the policy on discrimination, hiring/management procedures, and job description, these policies and procedures merely provide that the company will not practice invidious discrimination, that management will comply with certain procedures in hiring and supervising employees, and what certain jobs entailed. As to safety, employees were simply reminded to practice safe work habits and required to sign a statement promising that they would observe company safety rules. As to holiday and vacation time, the handbook and manual merely recite official holidays and the procedure to follow in taking leave. Regarding the tuition policy, the handbook and manual state that the employer will reimburse employees for taking enrichment courses pertinent to work. We discern nothing in either the handbook or manual tending to establish that Taylor's at-will employment status was altered. Accordingly, Cummins was entitled to summary judgment. See id.
 
 C.
 
 15
 Alternatively, we conclude that Cummins substantially complied with the disciplinary procedure; accordingly, even assuming arguendo that Taylor's at-will status was altered, he received the procedure to which he was entitled.[3] Vice President and General Manager of Cummins William Leggitt (Leggitt) met with Taylor on three separate occasions to discuss Taylor's poor work performance. On June 19, 1990, Leggitt informed Taylor that various customers were complaining about Taylor and warned Taylor to improve his performance. At a subsequent meeting, Leggitt again warned Taylor that his work performance was inadequate and must improve. Finally, on March 13, 1991, Leggitt met with Taylor for the purpose of terminating his employment. The disciplinary procedure permits deviations, provided any deviation is approved by a vice president. Here, the only deviation from the disciplinary procedure was that a form was not executed and placed in Taylor's file, but the entire disciplinary pro cess was conducted by the Vice President and General Manager. Any deviations, therefore, were proper. Here, not only was the deviation administrative in nature, but it was executed by a party charged with approving deviations. We are wholly persuaded that Cummins complied in substance with the disciplinary procedure. Accordingly, Taylor received all of the disciplinary procedure to which he was entitled. Taylor, therefore, cannot be heard to complain.
 
 III.
 
 16
 We conclude that Taylor's at-will employment status was not altered. Even assuming that Taylor's employment status was contractual, we conclude further that Taylor received the benefit of the disciplinary procedure, and therefore even under the provisions of the handbook and/or manual, Cummins breached no employment contract in terminating Taylor. The judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 [1]
 While other claims were unsuccessfully asserted against Cummins, the only one challenged on appeal is the breach of employment contract claim
 
 
 [2]
 See n. 3, Section II.C
 
 
 [3]
 Since we conclude, in the alternative, that Taylor received all the disciplinary procedure to which he was entitled under the handbook and/or manual, we need not discuss his assertions that oral representations and/or the commission agreement had the effect of altering his at-will employment status. As the text of this section demonstrates, we have indulged Taylor's position that his at-will employment status was altered, and even accepting this position, we conclude that his claim cannot succeed